The STATE of Ohio, Appellee,

v.

ROBERTSON, Appellant.

[Cite as *State v. Robertson* (1993), 90 Ohio App.3d 715.]

Court of Appeals of Ohio,
Montgomery County.

No. 12016.

Decided Oct. 20, 1993.

716

*Carley J. Ingram,* Montgomery County Assistant Prosecuting Attorney, for appellee.

*Barbara A. Farnbacher,* Assistant State Public Defender, for appellant.

FAIN, Judge.

Defendant-appellant Eddie Robertson appeals from his conviction and sentence for robbery, in violation of R.C. 2911.02(A), with a specification, pursuant to R.C. 2941.142, that Robertson was previously convicted of an aggravated felony. Robertson contends that the prosecutor exercised his peremptory challenges in a racially discriminatory manner and that the trial court erred when it failed to impanel a new venire or to accord Robertson some other appropriate remedy. Alternatively, Robertson asserts that trial counsel was ineffective by having failed to object in a timely manner to the state's improper use of peremptory challenges and by having failed to rebut the state's explanation for the use of its peremptory challenges. Additionally, Robertson claims that the trial court erred when it admitted into evidence testimony of other bad acts allegedly committed by Robertson.

We conclude that the issue regarding the admission of the other acts evidence was not properly preserved for appellate review. We conclude that trial counsel's objection to the state's use of peremptory challenges was untimely, but we also conclude that that untimeliness constituted ineffective assistance of counsel. Accordingly, the judgment of the trial court is reversed, and this cause is remanded for further proceedings as is more particularly described in this opinion.

## I

Robertson admitted to two police detectives that he robbed the American Plaza Hotel in downtown Dayton and the Salem Avenue public library branch. He subsequently recanted his admission to robbing the library. At trial, Robertson claimed that he tried to recant his admission to robbing the hotel but was prevented from doing so by the detectives.

In April 1988, a man identified as Robertson approached the front desk manager at the American Plaza Hotel in the afternoon to rent a room. Upon receiving the paperwork to register for a room, Robertson announced his intention to rob the hotel and claimed that he had a gun. The desk manager opened the cash register. Robertson grabbed approximately $350 to $375 from the register and escaped into a waiting car. The desk manager was the only person present during the incident.

The desk manager identified Robertson in mid–May from an array of photographs. In September, she identified him from a lineup. Robertson was arrested, and in an interview with Detectives Eckert and Elzholz, Robertson confessed to robbing the library and the hotel. Robertson testified that he confessed to the robberies due to the pain he experienced from a toothache.

Robertson was charged with nine criminal counts, including one count of aggravated murder with death penalty specifications. The count of robbery involved in this appeal was severed from the remaining counts in the indictment.

Robertson's motion to suppress his incriminating statement and the eyewitness identification was overruled by the trial court. Robertson was found guilty of robbery and the specification. He was sentenced to a term of eleven to fifteen years' incarceration, to be served consecutively to two other previously imposed sentences. From the judgment of the trial court, Robertson appeals.

After an attorney for Robertson filed an *Anders* brief, the Ohio Public Defender Commission filed a brief on Robertson's behalf containing two assignments of error. We will address the two assignments of error raised by the Ohio Public Defender Commission. Since a brief asserting assignments of error has

been filed in Robertson's behalf, we will not independently review the record in search of possible error in response to the original *Anders* brief.

## II

Robertson's first assignment of error is as follows:

"The trial court erred by failing to impanel a new venire or fashion another appropriate remedy where the prosecutor exercised his peremptory challenges in a racially discriminatory manner. Said error deprived appellant of his right to equal protection of the law guaranteed by the Fourteenth Amendment to the United States Constitution, and Section 2, Article I of the Ohio Constitution."

Robertson alleges that the trial court erred and deprived him of his right to equal protection when it proceeded to trial after the prosecutor exercised his peremptory challenges in a racially discriminatory manner. The state asserts that Robertson failed to object in a timely manner to the prosecutor's exercise of his peremptory challenges. Robertson waited until the jury was seated and sworn and the venire was discharged before complaining about the prosecutor's challenges. Before considering the merits of Robertson's allegation, we must consider whether Robertson timely objected to the composition of the jury.

Defense counsel must object to the racially motivated use of peremptory challenges prior to the jury's being sworn. *State v. Brooks* (June 4, 1987), Montgomery App. No. 9190, unreported, 1987 WL 12231, citing *Batson v. Kentucky* (1986), 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69. This court has held that waiting to object to the prosecutor's use of peremptory challenges until after the jury is sworn prevents the trial court from noticing and correcting any error. We noted that the requirement of contemporaneous objection with the exercise of a peremptory challenge is based upon practical necessity and basic fairness in the operation of the judicial system.

In the case before us, the record indicates that Robertson objected to the prosecutor's use of peremptory challenges after the jury was sworn and excused to view the scene of the crime. We conclude that Robertson's objection to the prosecutor's use of peremptory challenges was untimely.

Alternatively, Robertson contends that his trial counsel was ineffective because counsel failed to object to the prosecutor's use of peremptory challenges in a timely manner and failed to rebut the prosecutor's explanation regarding the dismissal of the prospective jurors. To successfully establish a denial of effective assistance of counsel, the following two-pronged test set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, must be satisfied:

▆▆▆▆▆▆▆▆▆▆▆▆

"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.

"Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland* at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

The test for whether a defendant has received effective assistance of counsel is " 'whether the accused, under all the circumstances, including the fact that he had retained counsel, had a fair trial and substantial justice was done.' " *State v. Cooperrider* (1983), 4 Ohio St.3d 226, 228, 4 OBR 580, 582, 448 N.E.2d 452, 453, quoting *State v. Hester* (1976), 45 Ohio St.2d 71, 74 O.O.2d 156, 341 N.E.2d 304, paragraph four of the syllabus.

A two-step analysis is involved in the application of the above test. It must first be determined "whether there has been a substantial violation of an essential duty owed by the defense counsel to the defendant." *Cooperrider* at 228, 4 OBR at 582, 448 N.E.2d at 453. If so, "a determination as to whether the defense was prejudiced by such violation" is then necessary. *Id.*

▆▆▆ We have often opined that it would be an unusual case in which ineffective assistance of trial counsel would be clearly established in the record of a direct appeal, since a performance of trial counsel that appears from the record to have been deficient may have a reasonable explanation in view of facts and circumstances that are not apparent from the record. In our view, however, this is the rare case in which the ineffective assistance of trial counsel can be clearly demonstrated from the record in a direct appeal. There could not possibly have been a tactical reason to have waited to mount a *Batson* challenge to the composition of the jury until that challenge became untimely in accordance with *Brooks, supra.* There was at least a prima facie basis for a *Batson* challenge, since the defendant was an African–American and the state had used its peremptory challenges to excuse three African–American members of the panel, leaving only one African–American as an alternate juror who would probably not participate in deliberations.

The only remaining question is whether a timely *Batson* challenge would have succeeded, *i.e.*, was the *Batson* challenge meritorious.

The state provided explanations for its use of the peremptory challenges to the trial court. The transcript reveals the following colloquy:

"THE COURT: Now that the Jury is out of the courtroom, if there are any matters to be brought to the attention of the Court, you might do that at this time.

"MR. CLAYPOOL: I have [two] matters I wish to bring to the attention of this Court at this time. We would object to the Panel selected in this manner for the reason that the State of Ohio used three peremptory challenges to remove members of the Black race from sitting as jurors in this matter and we wish that to be made part of the record.

"THE COURT: Do you wish to respond to that?

"MR. MULLIGAN: I'd sort of like to hear his second point before I respond to this first one.

" * * *

"MR. MULLIGAN: Your Honor, I believe the issue brought up is governed by *Batson v. Kentucky* and *Brown v. United States.* As an officer of the Court, I will state as a matter of fact that no juror was removed solely because of his race by the State. The reason why the first Black juror was removed—I believe her name was Miss Stribling—is because in response to a question she indicated that she, in fact, would be sympathetic to Mr. Robertson's plight which is specifically what I asked the jurors not to do. That was the reason for her removal.

"Mr. Bailey was the next Black juror removed. The reason why Mr. Bailey was removed is because he was very closed; that is, his body language was extremely closed. His hands were folded the entire time he spoke to me. He could not look me in the eye. His voice was soft and the look that was on his face was absolutely hostile. Quite frankly, I felt that he would intimidate some of the other jurors. When he came into the Box, I also noticed their body language. It was a negative situation. That's why Mr. Bailey was removed.

"The reason Miss Lynch was removed is because she stated her husband was a childhood friend of the Defendant. Knowing he was a childhood friend of the Defendant, there was no way that I was going to allow her to be on the jury, quite frankly.

"It should also be noted for the record the alternate, Mr. Wicks, is of the Black race. It should also be noted for the record only a total of four prospective jurors in this entire panel this morning were, in fact, Black; and finally, the State would like to place an objection because all four pre-emptory [*sic*] challenges used by the Defense removed people of the White race.

"Now, while that may not currently be the case law, it certainly should be because it is converse to *BASHON* [*Batson*] *V. KENTUCKY* and *BROWN V. UNITED STATES.* I'd like that objection noted on the record. I really would like an explanation as to why that was done.

"THE COURT: Well, of course, as I understand the law, there was no need for the State to respond to explain why nor is there any requirement that Counsel

for the Defense give a reason and explain why those persons excused by Defense were so excused but I do know that this matter is a sensitive matter and if the State wishes to place on record the reasons then the State may do so. If Mr. Claypool wishes to respond, you may but you're certainly not required to.

"MR. CLAYPOOL: If I could have one second, your Honor. We have no response, your Honor. * * * "

The record demonstrates that the trial court erred in its understanding of its proper role with respect to a *Batson* challenge.

■ Purposeful racial discrimination in the selection of a jury panel violates a defendant's right to equal protection and denies a defendant the protection that a trial by jury is intended to secure. *Batson v. Kentucky, supra; Powers v. Ohio* (1991), 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411. The United States Supreme Court has held:

"[A]lthough a prosecutor ordinarily is entitled to exercise permitted peremptory challenges 'for any reason at all, as long as that reason is related to his view concerning the outcome' of the case to be tried [citations omitted], the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant." *Batson,* 476 U.S. at 88, 106 S.Ct. at 1719, 90 L.Ed.2d at 81.

■ The defendant bears the burden of making a prima facie case of purposeful discrimination. The defendant is entitled to rely on the fact that peremptory challenges are a jury selection method that allow those to discriminate who are of a mind to do so. The defendant must show that the facts and circumstances give rise to an inference that the prosecutor used his peremptory challenge to exclude a juror on the basis of his race. *Id.* at 95, 106 S.Ct. at 1723, 90 L.Ed.2d at 87. Once the defendant establishes a prima facie case, the burden shifts to the prosecution to present a race-neutral explanation for having peremptorily challenged African–American jurors.

The state explained that Stribling was excused because the prosecution thought that she would be sympathetic to Robertson's plight. Bailey was excused because of his negative body language and his ability to possibly intimidate some of the other jurors based upon the other jurors' body language. Robertson concedes that the third African–American prospective juror was challenged for a legitimate reason.

■ With respect to prospective juror Stribling, we find adequate support in the record for the state's proffered reason for the peremptory challenge. It must be borne in mind that less is required than would be required to support a

challenge for cause. The record reveals that the prosecutor put the following question to the entire venire:

"Now, Mr. Robinson [*sic*] may have family members watching this trial. Would you be willing to return a verdict of guilt if the facts showed, despite the fact that we're only a couple of days before Christmas and his family members would be in the back of the Courtroom, is there anyone here who could not do that? Assuming the facts showed he was guilty, is there anyone who couldn't do it?"

No one responded affirmatively to the foregoing. Later, however, the following colloquy ensued between prospective juror Stribling and Robertson's trial counsel:

"MR. CLAYPOOL: Miss Stribling, is there anything on your mind that causes you to believe that you could not be a fair and impartial juror to Eddie Robertson or the State of Ohio in this matter?

"MS. STRIBLING: When the other lawyer mentioned sensitiveness, witness' family, I was considering that, but I'm not sure that would—

"MR. CLAYPOOL: Could you put that out of your mind and determine the facts of this case because you would be the deciders of the facts of this case, whether the Defendant is guilty or not guilty, solely upon the evidence that will come from that witness stand and the exhibits that are introduced?

"MS. STRIBLING: I think I can."

When responding to the *Batson* challenge, the prosecutor said that he challenged Stribling peremptorily because he was concerned that she might have undue sympathy for the defendant. The possibility that a prospective juror will be unduly sympathetic to a party is difficult to expose. Few persons can be expected to admit that they are unduly sympathetic to one side or the other, or that their sympathy may impair their ability to render an impartial verdict. The difficulty of establishing such a tendency to the extent necessary to justify a challenge for cause is one of the reasons for allowing peremptory challenges in addition to challenges for cause.

In our view, the record portrays that prospective juror Stribling was apparently beginning to voice some uncertainty in her ability to put aside any sympathy that she might have for the defendant and his family when the defendant's trial counsel understandably headed her off with a question that anyone would find it hard to answer other than affirmatively, since a negative answer would tend to cast the prospective juror in a bad light. In these circumstances, it was reasonable, and perhaps inevitable, for the prosecutor to conclude that there was an unacceptable risk that Stribling would be swayed by sympathy for the

defendant, even though it would be unlikely that that could be established with a sufficient basis in the record to support a challenge for cause.

We conclude that there is compelling support in the record for the nonracially discriminatory reason proffered by the state for its decision to challenge prospective juror Stribling peremptorily. In our view, the trial court would have abused its discretion had it not found this proffered race-neutral reason legitimate. Accordingly, the trial court's erroneous conclusion that it had no role to play in assessing the state's proffered reason was harmless beyond reasonable doubt, and cannot provide a basis for disturbing Robertson's conviction.

We reach a different conclusion with respect to the prosecutor's proffered defense of his decision to challenge prospective juror Bailey peremptorily. The following innocuous colloquy ensued with respect to Bailey:

"MR. MULLIGAN: * * * Is there anything that you have heard thus far this morning that would prevent you from being a fair and impartial juror?

"MR. BAILEY: No.

"MR. MULLIGAN: Okay. How long have you been employed at Good Samaritan Hospital? That's where you work, right?

"MR. BAILEY: Twelve and a half years.

"MR. MULLIGAN: And what do you do there?

"MR. BAILEY: Computer maintenance, hardware service, and maintaining equipment.

"MR. MULLIGAN: Okay. Does it make any difference what department that's in or do you go in any department?

"MR. BAILEY: I'm all over the hospital.

"MR. MULLIGAN: You're all over the place, okay. You've been involved in a lawsuit before?

"MR. BAILEY: Well, some time ago, a civil suit.

"MR. MULLIGAN: A civil suit?

"MR. BAILEY: Um hum (indicating yes).

"MR. MULLIGAN: Was that here in this courthouse?

"MR. BAILEY: Well, it wasn't in the courthouse. It was just a suit filed. There was never any trial or anything like that.

"MR. MULLIGAN: Did you file the suit or was it filed against you?

"MR. BAILEY: It was filed against me.

"MR. MULLIGAN: But it never went to trial or anything?

"MR. BAILEY: No.

"MR. MULLIGAN: Good. It was settled or dismissed?

"MR. BAILEY: Settled.

"MR. MULLIGAN: Do you know what judge that case was assigned to?

"MR. BAILEY: No.

"MR. MULLIGAN: There were papers actually filed though, right?

"MR. BAILEY: I don't know. I got a summons and it was, as I said, it was filed but it was as far—that's been some time ago.

"MR. MULLIGAN: Did you feel that the court system or the justice system in general treated you fairly in that process?

"MR. BAILEY: Yes. As I said, it wasn't, you know, no problems as far as I was concerned. It was just—it was one of those things.

"MR. MULLIGAN: You were pleased then?

"MR. BAILEY: Yeah.

"MR. MULLIGAN: Okay. We would pass for cause at this time, Your Honor.

"MR. CLAYPOOL: Thank you. Mr. Bailey, Mr. Mulligan inquired about this previous suit that you were involved in. That previous action, it would not affect your ability to serve as a fair and impartial juror in any manner?

"MR. BAILEY: No.

"MR. CLAYPOOL: You also heard questions that I asked previously. You've been in the back of the Courtroom and there was other questions, is that correct?

"MR. BAILEY: Yes.

"MR. CLAYPOOL: We would pass as to the cause, Your Honor.

"THE COURT: All right. The State's second peremptory.

"MR. MULLIGAN: Your Honor, with our thanks, we would excuse Mr. Bailey."

■ As noted previously, the prosecutor proffered as the reason for his peremptory challenge of prospective juror Bailey his closed body language and hostile, intimidating appearance, which the prosecutor claimed to have observed impacting upon the attitude of other prospective jurors in the jury box. There is no way that this proffered reason for having peremptorily challenged prospective juror Bailey can be evaluated from a sterile transcript. It was the responsibility of the trial judge to determine whether this was the real reason for the state's having peremptorily challenged Bailey, and it is clear from the record that the trial judge was under the erroneous impression that that was no concern of his.

The Court of Appeals for Franklin County was in a somewhat similar predicament in *State v. Tuck* (1992), 80 Ohio App.3d 721, 610 N.E.2d 591. That court reversed a conviction and remanded the cause to the trial court with instructions to consider the prosecutor's proffered race-neutral reason for having peremptorily challenged the prospective juror in question and to decide whether to accept it as the real reason. If the trial court did accept the proffered reason, then it could simply reinstate the conviction; otherwise, it would have to retry the defendant. *Id.* at 725, 610 N.E.2d at 594.

We conclude that the remedy fashioned by the court of appeals in *Tuck* is a reasonable remedy, and we adopt it here, with an important caveat. Upon remand in that case, the trial judge conducted a meaningful review of the state's proffered reason for having exercised its peremptory challenge, in accordance with the mandate from the appellate court. The proceedings upon remand in *Tuck* are exemplary, and we attach a transcript of those proceedings as an appendix to this opinion. The trial court in the case before us would do well to review that transcript in preparation for the further proceedings required by our mandate in this case.

In *Tuck*, on remand, Judge Evelyn Stratton was able to recall the circumstances of the particular voir dire involved because they had evidently made a vivid impression upon her at the time. Judge Stratton noted that "the court suspected that this issue could somehow come back to haunt it." As in the case before us, the proffered reason for the peremptory challenge in *Tuck* related to the prospective juror's appearance ("his unkempt appearance and lack of attention") in a way that could not possibly have been captured by a transcript. Judge Stratton conscientiously followed the mandate of the court of appeals, ultimately concluding that the proffered reason for the peremptory challenge was not the real reason, in large part because at the time of the voir dire she had silently disagreed with the prosecutor's characterization of the prospective juror as unkempt of appearance and lacking in attention. Judge Stratton ordered a new trial.

We must consider what the result should be if the trial court in this case should not have the good fortune of being able to recall prospective juror Bailey's appearance and demeanor during one voir dire that occurred several years ago. That is the caveat referred to earlier. If the trial court cannot, upon the remand of this case, recall the voir dire sufficiently to evaluate whether the prosecutor's proffered race-neutral reason for the peremptory challenge to prospective juror Bailey was bona fide, then Robertson is entitled to a new trial. The record in this case clearly portrays error. The trial court was required to determine whether the race-neutral reason proffered by the state was bona fide, and it

clearly failed to do so, having erroneously concluded that that was not for it to determine.

On remand, the trial court must conscientiously determine, if it can, what conclusion it would have reached concerning the validity of the state's proffered reason, had it recognized its duty to reach such a conclusion. If that determination is in favor of the state, then Robertson's conviction and sentence may be reinstated, since the error in the proceedings relating to his *Batson* challenge would necessarily have been harmless. If, on the other hand, that determination is in favor of Robertson, then he is entitled to a new trial before a jury that is not tainted by the exercise of peremptory challenges in a racially discriminatory manner. Finally, if the trial court simply cannot recall the circumstances of the voir dire in question in sufficient detail to permit a determination, which would be understandable in view of the time that has elapsed since the voir dire, then it cannot be determined beyond reasonable doubt that the error that has been portrayed in the record was harmless, and so Robertson must be given a new trial. Specifically, if the trial court cannot recall the circumstances of the voir dire, there is no way that it can determine what its conclusion would have been as to the validity of the reason proffered by the state for its peremptory challenge, had it recognized its duty to reach such a conclusion. Nor is there any way that this can be gleaned from a transcript, since the proffered reason involves appearances that cannot possibly be captured in a transcript.

Robertson's first assignment of error is sustained.

### III

Robertson's second assignment of error is as follows:

"The trial court erred by admitting into evidence testimony of other bad acts allegedly committed by appellant, in contravention of Evid.R. 403 and 404, and R.C. 2945.59, thereby depriv[ing] appellant of his right to a fair trial guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution."

Robertson maintains that the trial court erred to his prejudice when it permitted the state to introduce evidence of other alleged bad acts committed by Robertson. The state counters that the allegations of other robberies were properly referred to before the jury because they were relevant to Robertson's defense. The state tried to disprove Robertson's claim that he was living with his mother at the time of the hotel robbery by eliciting testimony from her that she put him out of her house prior to the robbery because he stole from her.

The trial court permitted the jury to hear references to other robberies that were being investigated and an allegation that Robertson had taken money from

his mother. The record reveals that Robertson did not object to the admission of this evidence. Ohio Evid.R. 103(A) provides that error may not be predicated upon a ruling that admits evidence unless a substantial right of the party is affected and a timely objection or motion to strike appears in the record. Failure to object to evidence at trial constitutes a waiver of any challenge to the evidence on appeal.

Robertson asserts that the error rises to the level of plain error. Crim.R. 52(A) provides that any error which does not affect a substantial right shall be disregarded. Plain error affecting a substantial right, if clearly apparent on the face of the record, may be noticed although it was not brought to the attention of the trial judge.

■ The doctrine of plain error should be implemented with utmost caution under exceptional circumstances to prevent a manifest miscarriage of justice. *Reichert v. Ingersoll* (1985), 18 Ohio St.3d 220, 223, 18 OBR 281, 283, 480 N.E.2d 802, 804. Proper objection necessary to preserve the right of appellate review is not present in this case. Unless plain error exists, reversible error must be made apparent to the trial judge so that there is opportunity for the judge to correct the error.

During opening statement and throughout the trial, Robertson claimed that he was not at the American Plaza Hotel on the day of the robbery, but was at his mother's house sleeping. The state tried to discredit Robertson by showing that his mother had put him out of the house prior to the time of the robbery.

The evidence of the other robbery at the Salem Avenue library was introduced during the testimony of the detective who interviewed Robertson. The detective explained that Robertson had admitted to the library robbery and the hotel robbery, but later retracted the library robbery admission. Robertson wrote on the confession form, "I did not rob the library on Salem." The detective testified that Robertson did not retract the hotel robbery admission.

Robertson claimed that he wished to recant the admission of the robbery, but was prevented from doing so. Robertson's attorney proceeded to cross-examine the detective regarding Robertson's attempt to retract the hotel robbery admission. When the state attempted to introduce evidence of other robberies that occurred on the same day as the library robbery to allegedly explain why Robertson recanted only the library robbery, the trial court sustained Robertson's objection.

Robertson testified that he attempted to retract the hotel robbery confession, but that the detectives would not permit him to do so. He further stated that he did not sign the form that the detectives had provided. On cross-examination, Robertson contended that he recanted the library robbery because he did not

commit the crime, and not because the detectives had informed him that other robberies had occurred on the same day as the library robbery.

In our view, the trial court did not err when it admitted the evidence that Robertson had been kicked out of his mother's home because he had stolen from her and that he had confessed to both the robbery for which he was charged and another robbery and had recanted the other robbery, not this one. The applicable rule is Evid.R. 404(B), which provides as follows [1]:

"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

The list of "other purposes" for which evidence of other bad acts may be admissible is not exclusive. Staff Note to Evid.R. 404(B). In the case before us, the evidence that Robertson's mother kicked him out of her home because he stole from her was offered to rebut his alibi defense, not to prove that because he stole from her on one occasion he must have committed the armed robbery for which he was charged. The evidence that Robertson had recanted a confession to another robbery was offered for the purpose of bolstering his confession to the robbery for which he was charged, since it showed that he knew how to recant the latter confession if he had wished to do so.[2] This, also, was admitted for a purpose other than to prove that because he committed another robbery he must have committed the one for which he was charged.

Even if evidence of other bad acts is admissible pursuant to Evid.R. 404(B), it may still be excluded pursuant to Evid.R. 403 if its prejudicial effect outweighs its probative value. We conclude that the trial court would have been within its discretion in holding that the probative value of the specific evidence discussed herein outweighed its prejudicial effect.

Finally, even if it would have been error for the trial court to have admitted the evidence in question over his objection, had he made objection, Robertson cannot show that the outcome of the trial would likely have been different, but for the error; plain error is predicated upon such a showing.

---

1. We do not read R.C. 2945.59 as being in conflict with Evid.R. 404. If there were any conflict, however, it would appear that Evid.R. 404 would take precedence as a rule of practice adopted pursuant to Section 5, Article IV of the Ohio Constitution.

2. We realize that Robertson claimed that he sought to recant his confession to the robbery for which he was charged, but was not allowed to do so. The police officers contradicted Robertson's testimony in this regard. The jury was free to believe or disbelieve Robertson.

*Cooperrider,* 4 Ohio St.3d at 227, 4 OBR at 581, 448 N.E.2d at 453, quoting *State v. Long* (1978), 53 Ohio St.2d 91, 97, 7 O.O.3d 178, 181, 372 N.E.2d 804, 808. The evidence in question was tangential. We do not find it likely that the outcome of the trial would have been different had it not been admitted.

Alternatively, Robertson asserts that trial counsel provided ineffective assistance by failing to object to the admission of this evidence to the prejudice of Robertson. We reject this assertion because we find it unlikely that the objection, had it been made, would have been sustained, and, further, we find it unlikely that the outcome of the trial would have been different had the objection been made and sustained. The evidence against Robertson included both a fairly straightforward eyewitness identification and a confession. We conclude that Robertson has failed to show that his counsel's performance was so deficient as to deprive him of a fair trial.

Robertson's second assignment of error is overruled.

## IV

Robertson's first assignment of error having been sustained, the judgment of the trial court is reversed, and this cause is remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BROGAN, J., concurs.

WOLFF, J., dissents.

WOLFF, Judge, dissenting.

I would affirm.

While I agree with the majority that the trial judge had a duty to determine the validity of the prosecutor's race-neutral explanation for his peremptory challenge of prospective juror Bailey, I think that on the state of this record, we should find the trial court's failure to do so harmless error.

In its discussion with trial counsel, as quoted in the majority opinion above, the trial court appears to have invited defense counsel to respond to the prosecutor's reasons for his peremptory challenges of three African–American prospective jurors, and to the prosecutor's objection to defense counsel's peremptory challenges of four white prospective jurors. Defense counsel declined to respond. I think it is reasonably inferable from the record that defense counsel, having had the same opportunity as the prosecutor to observe prospective juror Bailey, agreed with the prosecutor's race-neutral assessment of Bailey's lack of suitabili-

ty as a juror. As such, the failure of the trial court to determine the validity of the prosecutor's explanation for the peremptory challenge of Bailey was harmless error. The situation here is different from that in *Tuck, supra,* where the prosecutor did not provide a race-neutral explanation for excusing an African-American prospective juror.

I agree that the appellate record does not permit us to evaluate the validity of the prosecutor's explanation for excusing Bailey because the explanation as to Bailey, unlike that as to Stribling, was based on nonverbal factors, such as body language and facial expression. I think, however, that we can reasonably infer from the silence of defense counsel that he found the prosecutor's explanation valid. Thus, I would conclude that *this record* does not demonstrate that Robertson was deprived of a fair trial, such deprivation being the second prong of the two-prong *Strickland* test for ineffective assistance of counsel.

This does not mean that Robertson is without a remedy for ineffective assistance of counsel. For example, in a proceeding initiated by a petition for postconviction relief, Robertson might establish through the affidavit or testimony of his defense counsel that defense counsel did not agree that the prosecutor's race-neutral explanation for excusing Bailey was valid, and that there was no race-neutral basis for excusing him from jury duty. Thus, Robertson does have a means of demonstrating that he was deprived of his constitutional right to a fair trial. In my judgment, however, he has failed to demonstrate such a deprivation from the record on this direct appeal.

APPENDIX

IN THE COURT OF COMMON PLEAS OF FRANKLIN COUNTY, OHIO

CRIMINAL DIVISION

————————

STATE OF OHIO,

PLAINTIFF,

VS.

THEOTIS TUCK,

DEFENDANT.

CASE NO. 91CR–07–4308A.

EXCERPTS OF PROCEEDINGS

BEFORE THE HONORABLE EVELYN J. STRATTON, JUDGE, ON WEDNESDAY, NOVEMBER 4, 1992.

732

APPEARANCES:

MS. KATHLEEN PETERSON AND MS. JAMIE SCOTT, ASSISTANT PROSECUTING ATTORNEYS,

ON BEHALF OF THE PLAINTIFF, STATE OF OHIO.

MR. ERIC HOFFMAN,

ON BEHALF OF THE DEFENDANT.

WEDNESDAY AFTERNOON SESSION,

NOVEMBER 4, 1992.

\* \* \* \* \*

THE COURT: THIS CASE HAS BEEN A MOST DIFFICULT DECISION FOR THIS COURT. UNLIKE MOST VOIR DIRES, THIS COURT DOES HAVE A RATHER VIVID [RECOLLECTION] OF THIS PARTICULAR VOIR DIRE BECAUSE OF THE IMMEDIATE CHALLENGE THAT WAS ISSUED AT THE TIME THAT THE PEREMPTORY WAS EXERCISED AGAINST MR. BROWN AND IN THE ENSUING IN-CHAMBER DISCUSSIONS RESULTING OVER WHETHER A REASON HAD TO BE GIVEN FOR THAT CHALLENGE.

THE COURT COMMITTED TO MEMORY THOSE EVENTS AND MR. BROWN'S ROLE, AS THE COURT SUSPECTED THAT THIS ISSUE WOULD SOMEHOW COME BACK TO HAUNT IT.

THERE ARE TWO COMPELLING INTERESTS HERE. ON ONE SIDE THE DEFENDANT HAS A RIGHT TO A SELECTION OF A JURY FREE FROM BIAS OR PREJUDICE.

ON THE OTHER HAND, COUNSEL HAS A RIGHT TO EXERCISE DISCRETION AND JUDGMENT, SOMETIMES KNOWN AS JUST PURE "GUT FEELING", IN PICKING THE BEST JURY FOR THEIR CASE.

FIRST OF ALL, LET THE COURT REITERATE THAT IT HAS PERCEIVED NO SYSTEM WIDE PATTERN OF RACE DISCRIMINATION. BLACKS CONSTITUTE A SUBSTANTIAL PERCENTAGE OF NEARLY EVERY JURY THIS COURT HAS CONDUCTED. NOR HAS THE COURT EVER KNOWN MR. SHEERAN TO ENGAGE IN ANY OVERT PATTERN OF SINGLE OR SYSTEMATIC DISCRIMINATION IN ANY OF THE CASES BEFORE IT.

OBJECTIVELY, THERE SEEMS LITTLE BASIS FOR THE CHALLENGE TO MR. BROWN. HE WAS A FAMILY MAN, MARRIED, BOTH WORKING, LONG-TIME COLUMBUS RESIDENT. HE ANSWERED THE

VERY FEW QUESTIONS PUT TO HIM STRAIGHT AND TO THE POINT. HE GAVE NO ANSWERS OR INDICATIONS THAT HE COULD NOT BE FAIR OR IMPARTIAL. HOWEVER, HE WAS ALSO ASKED VERY FEW QUESTIONS BY EITHER COUNSEL.

SUBJECTIVELY, THE WITNESS FOR THE STATE, MS. JAMIE SCOTT, HAS TESTIFIED THAT HIS UNKEMPT APPEARANCE AND LACK OF ATTENTION CAUSED THEM CONCERN AND LED TO HIS CHALLENGE.

MR. SHEERAN REALLY HAS NO INDEPENDENT RECOLLECTION OF THIS CASE.

THE DANGER THIS COURT MUST GUARD AGAINST IS INVADING THE AREA OF DISCRETION UNDER THE BANNER OF DISCRIMINATION. IN OTHER WORDS, HAD MR. BROWN BEEN WHITE, WOULD HE HAVE BEEN CHALLENGED FOR THE SAME REASONS[?] BUT NOW COUNSEL FEELS CHILLED IN THEIR CHALLENGE TO A BLACK JUROR, LEST IT WOULD BE DEEMED IMPROPER UNDER THE SAME CRITERIA.

THERE MUST BE NO DISTINCTION, NO EXTRA FAVOR OR BENT TOWARDS BLACK[S] BECAUSE THEY ARE BLACK, JUST AS THERE MAY OPPOSITELY BE NO EXTRA FAVOR OR BENT AGAINST A BLACK BECAUSE HE IS BLACK.

IN OTHER WORDS, THEY MUST BE NEUTRAL ON BOTH SIDES. DISCRETION AND GUT FEELINGS ARE NECESSARY TOOLS EMPLOYED BY ALL SKILLED TRIAL LAWYERS.

ALL THAT HAVING BEEN SAID ABOUT DISCRETION, IT FINALLY COMES DOWN TO THIS COURT'S DISCRETION.

AS THE COURT OF APPEALS STATED, THE EXPLANATION—THE ACCEPTANCE OF A RACE–NEUTRAL EXPLANATION IS WITHIN THIS COURT'S DISCRETION TO ACCEPT. SIMPLY THE FACT THAT A RACE–NEUTRAL EXPLANATION WAS PRESENTED IS NOT ENOUGH TO SUPPORT A BATSON CHALLENGE. THE COURT, IN ITS DISCRETION, MUST ALSO ACCEPT THE SAME.

IN THIS CASE WE HAD A SOLE BLACK ON THE PANEL WITH A BLACK DEFENDANT. HE WAS CHALLENGED ON A "GUT FEELING" BASIS WHILE OBJECTIVELY MEETING ALL PROPER CRITERIA.

WHILE THE COURT BELIEVES THAT MR. SHEERAN DID NOT, PERHAPS, CONSCIOUSLY OR DELIBERATELY EXCLUDE MR. BROWN BECAUSE OF RACE, ·THE INQUIRY DOES NOT END THERE. THE

COURT MUST BE A JEALOUS GUARDIAN OF EVEN SUBTLE AND INSIDIOUS FORMS OF DISCRIMINATION.

THE COURT RECALLS ITS CLEAR AND STRONG REACTION AT THE TIME OF THE CHALLENGE.

THE COURT RECALLS NO UNKEMPT NOR DISHEVELED APPEARANCE, NOR ANY UNDUE LACK OF ATTENTION. VERY LITTLE WAS ASKED OF MR. BROWN. HE WAS SIMPLY QUIET.

THE COURT['JS REACTION THEN AND NOW WAS THAT THE REAL REASON FOR HIS CHALLENGE WAS HIS RACE AND THE FEAR HE MIGHT STICK BY ANOTHER OF HIS RACE.

HAD HE BEEN WHITE, THE COURT BELIEVES HE WOULD HAVE REMAINED ON THE JURY AND THAT THOSE OBSERVATIONS WOULD NOT HAVE BEEN A CONCERN. CLEARLY, MR. BROWN AND MS. LEGGET HAD THE SAME REACTION.

AGAIN, THE COURT STRESSES THAT IT DOES NOT BELIEVE THAT IT WAS INTENTIONAL BUT, RATHER, SUBTLE, AND, PERHAPS, [SUB-]CONSCIOUS, BUT STILL PERVASIVE AND REAL.

THE COURT STRONGLY BELIEVES THAT THIS WAS AT THE ROOT OF THE CHALLENGE AND FELT SO EVEN THEN. AS SUCH, THE COURT REJECTS THE STATE'S EXPLANATION OF A RACE–NEUTRAL BASIS.

THE PROSECUTOR AT THE TIME CHALLENGED ON THAT BASIS, ARGUED THAT ONLY A PATTERN WAS REQUIRED, NOT A SINGLE CHALLENGE. THIS COURT LEFT THE MATTER FOR THE COURT OF APPEALS TO RESOLVE. THE COURT OF APPEALS HAS HELD THAT ONE CHALLENGE MAY BE ENOUGH IF WRONGFULLY EXERCISED.

AS THAT MATTER IS NOW BEFORE THE COURT, THIS COURT, IN ITS DISCRETION, FINDS THE PROSECUTOR'S EXPLANATION NOT TO BE SUFFICIENTLY RACE–NEUTRAL. ONE CHALLENGE WAS ONE CHALLENGE TOO MUCH.

THEREFORE, THE COURT FINDS UNDER BATSON THAT THE DEFENDANT IS ENTITLED TO A NEW TRIAL.

IF THE PROSECUTION AND DEFENSE COUNSEL WILL PLEASE GET TOGETHER WITH MY BAILIFF TO SELECT A NEW TRIAL DATE.

CERTIFICATE

I DO HEREBY CERTIFY THE FOREGOING IS A TRUE AND CORRECT EXCE[R]P[T] OF PROCEEDINGS TAKEN BY ME ON NOVEMBER 4, 1992 AND TRANSCRIBED FROM MY STENOGRAPHIC NOTES.

DEBRA CAHILL,
ASSISTANT OFFICIAL
COURT REPORTER.