DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Angela Groce-Hopson, appeals from her convictions in the Lorain County Court of Common Pleas. We affirm.
 I. {¶ 2} On July 24, 2002, Ms. Groce-Hopson was indicted of one count of theft, in violation of R.C. 2913.02(A)(1), a fifth degree felony, and one count of contributing to unruliness or delinquency of a child, in violation of R.C. 2919.24, a first degree misdemeanor. Ms. Groce-Hopson pled not guilty to these charges.
 {¶ 3} On June 6, 2003, the State filed a motion to consolidate Ms. Groce-Hopson's case with that of Deforest Flowers ("Flowers"), who was charged for the same incident. On June 12, 2003, the trial court granted the State's motion and consolidated the cases for a jury trial. Subsequently, the jury convicted Ms. Groce-Hopson and Flowers of one count of complicity in the commission of a theft of $500.00 or more, and one count of contributing to the unruliness or delinquency of a child. The trial court sentenced Ms. Groce-Hopson accordingly.
 {¶ 4} Ms. Groce-Hopson timely appealed, asserting four assignments of error. We address the third and fourth assignments of error together, to facilitate review.
 II. A. First Assignment of Error
"The trial court erred in violation of the sixth andFourteenth Amendment to the United States constitution and section 10
Article 1 of the ohio constitution when it allowed the state of ohio to exclude the only minority member of the jury from service on the trial jury."
 {¶ 5} In her first assignment of error, Ms. Groce-Hopson asserts that the trial court erred by allowing the State to exclude from the jury the only minority candidate, an African-American male, through a peremptory challenge. Ms. Groce-Hopson's assertion lacks merit.
 {¶ 6} To contest a peremptory challenge, the party "`must object to the racially motivated use of peremptory challengesprior to the jury's being sworn.'" (Emphasis added.) State v.Thompson (Mar. 1, 2000), 9th Dist. No. 98CA007112, quotingState v. Robertson (1993), 90 Ohio App.3d 715, 719. Furthermore, the requirement that such an objection be made contemporaneously "`with the exercise of [the] peremptory challenge is based upon practical necessity and basic fairness in the operation of the judicial system.'" Id. Therefore, an objection to the use of a peremptory challenge "is untimely if made after the jury is sworn." Id.
 {¶ 7} In this case, Ms. Groce-Hopson did not contest the exclusion of this potential juror until after the jury was duly impaneled, accepted, and sworn by the court. Therefore, we conclude that Ms. Groce-Hopson did not object in a timely manner to the State's peremptory challenge. Thus, the objection is not properly before this Court. Ms. Groce-Hopson's first assignment of error is overruled.
 B. Second Assignment of Error
"The trial court erred to appellant's prejudice when it granted the state's motion to consolidate the trial pursuant to ohio rules of criminal procedure 8(a) and 13 in violation of appellant's state and federal constitutional due process rights to a fair trial."
 {¶ 8} In her second assignment of error, Ms. Groce-Hopson avers that the trial court erred in granting the State's motion to consolidate her trial with that of Flowers. We disagree.
 {¶ 9} Ms. Groce-Hopson moved for severance of the trials at the outset, before trial commenced, and renewed her motion at the close of the State's case. The trial court denied the motion in both instances, finding no undue prejudice to either defendant in this case as a result of the joint trial.
 {¶ 10} It is well-settled that the law favors joinder. Statev. Merriweather (May 13, 1998), 9th Dist. No. 97CA006693, citingState v. Franklin (1991), 62 Ohio St.3d 118, 122; State v.Thomas (1980), 61 Ohio St.2d 223, 225. Crim.R. 13 provides:
"The court may order two or more indictments or informations or both to be tried together, if the offenses or the defendants could have been joined in a single indictment or information. The procedure shall be the same as if the prosecution were under such single indictment or information."
 {¶ 11} Accordingly, Crim.R. 8(B) provides for the joinder of defendants:
"Two or more defendants may be charged in the same indictment, information or complaint if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses, or in the same course of criminal conduct."
 {¶ 12} Not all of the defendants need to be charged with every count. State v. Roderick (Sept. 30, 1992), 9th Dist. No. 15503, citing State v. Schiebel (1990), 55 Ohio St.3d 71, 89.
 {¶ 13} However, Crim.R. 14 states in part:
"If it appears that a defendant or the state is prejudiced by a joinder * * * of defendants in an indictment * * * or by such joinder for trial together of indictments, informations or complaints, the court shall * * * grant a severance of defendants, or provide such other relief as justice requires."
A defendant that claims error in the trial court's refusal to allow separate trials bears the burden of affirmatively demonstrating that his or her rights were prejudiced.Merriweather, supra, citing State v. Torres (1981),66 Ohio St.2d 340, 343. Only an actual injustice, and not merely a risk of injustice, is sufficient. State v. Sharier (Apr. 24, 1991), 9th Dist. No. 14795, citing State v. Williams (1981),1 Ohio App.3d 156, 158. The defendant must provide the trial court with sufficient information so that the court is able to weigh the considerations favoring joinder against the defendant's right to a fair trial. Merriweather, supra, citing Torres,66 Ohio St.2d at 343. Additionally, the defendant must demonstrate that the trial court abused its discretion in refusing to separate the charges for trial. Id.
 {¶ 14} In the instant case, Ms. Groce-Hopson argues that the accumulation of evidence against Flowers impacted her case and resulted in a conviction that she claims was unsupported by the evidence. Ms. Groce-Hopson avers that Flowers was in possession of the minor child, gave police misleading information when questioned, and changed his clothing after the incident which caused a suspicion that he was being evasive. Ms. Groce-Hopson contends that this conduct prejudiced her case.
 {¶ 15} A review of the record demonstrates that the trial court did not abuse its discretion. Ms. Groce-Hopson and Flowers were charged with identical offenses. The offenses were based on the same series of events. Specifically, the charges were based on Ms. Groce-Hopson's and Flowers' conduct, as observed by the store personnel and police. The police officer testimony demonstrates that neither Ms. Groce-Hopson nor Flowers implicated the other. Furthermore, because neither Ms. Groce-Hopson nor Flowers testified at trial, no Bruton problem was posed in this case. See Bruton v. United States (1968), 391 U.S. 123, 132,20 L.Ed.2d 476. We conclude that Ms. Groce-Hopson has failed to demonstrate that she was actually prejudiced by the joinder of these two trials. See Sharier, supra; Williams,1 Ohio App.3d at 158. See, also, Merriweather, supra; Torres,66 Ohio St.2d at 343. Therefore, we find that the trial court did not abuse its discretion in consolidating the trials. See Merriweather,
supra; Torres, 66 Ohio St.2d at 343.
 {¶ 16} Accordingly, Ms. Groce-Hopson's second assignment of error is overruled.
 C. Third Assignment of Error
"The trial court erred to the prejudice of appellant in violation of Criminal Rule 29 Article 1 section 10 of the ohio constitution and the due process clause of the constitution of the united states when it denied appellants [sic.] motion for acquittal."
 Fourth Assignment of Error
"The trial court erred to the prejudice of appellant when it entered judgment of conviction, where such judgment was against the manifest weight of the evidence."
 {¶ 17} In her third and fourth assignments of error, Ms. Groce-Hopson avers that the trial court erred in denying her Crim.R. 29 motion for acquittal, and that her conviction was against the manifest weight of the evidence. We disagree.
 {¶ 18} As a preliminary matter, the Court observes that sufficiency of the evidence and weight of the evidence are legally distinctive issues. State v. Thompkins,78 Ohio St.3d 380, 386, 1997-Ohio-52.
 {¶ 19} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 20} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Tompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence, "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
 {¶ 21} Sufficiency of the evidence is required to take a case to the jury; therefore, a finding that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462. "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." Id.
 {¶ 22} In the present case, Ms. Groce-Hopson was convicted of one count of complicity in the commission of a theft of $500.00 or more, and one count of contributing to the unruliness or delinquency of a child. The charges were based on an incident at a Target brand department store in Avon Commons, in Avon, Ohio. Under R.C. 2913.02, "theft" is defined as follows:
"(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
"(1) Without the consent of the owner or person authorized to give consent;
* * *
"(B)(1) Whoever violates this section is guilty of theft.
"(2) * * * If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars * * *, a violation of this section is theft, a felony of the fifth degree."
 {¶ 23} Under R.C. 2919.24, "contributing to unruliness or delinquency of a child" is defined as:
"(A) No person, including a parent, guardian, or other custodian of a child, shall do any of the following:
"(1) Aid, abet, induce, cause, encourage, or contribute to a child or a ward of the juvenile court becoming an unruly child * * * or a delinquent child * * *;
* * *
"(B) Whoever violates this section is guilty of contributing to the unruliness or delinquency of a child, a misdemeanor of the first degree."
 {¶ 24} In the third and fourth assignments of error, Ms. Groce-Hopson contends that the prosecution's evidence did not establish that she independently had the requisite mental state to support her conviction. Under R.C. 2901.22(B), "culpable mental states":
"A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
When the disputed issue is the defendant's culpable mental state, proof must be derived from circumstantial evidence, as direct evidence will not be available. State v. Ray (Dec. 22, 1993), 9th Dist. No. 16050, citing State v. Lott (1990),51 Ohio St.3d 160, 168.
 {¶ 25} It is well settled that the State may rely on circumstantial evidence to prove an essential element of an offense, as "`circumstantial evidence and direct evidence inherently possess the same probative value[.]'" State v. Smith
(Nov. 8, 2000), 9th Dist. No. 99CA007399, quoting State v.Jenks (1991), 61 Ohio St.3d 259, at paragraph one of the syllabus. "Since circumstantial evidence and direct evidence are indistinguishable so far as the jury's fact-finding function is concerned, all that is required of the jury is that it weigh all of the evidence, direct and circumstantial, against the standard of proof beyond a reasonable doubt." Jenks,61 Ohio St.3d at 272. While inferences cannot be based on inferences, a number of conclusions can result from the same set of facts. Lott,51 Ohio St.3d at 168, citing Hurt v. Charles J. Rogers Transp. Co.
(1955), 164 Ohio St. 329, 331-34. Thus, the jury may employ a series of facts or circumstances as the basis for its ultimate conclusion. Id.
 {¶ 26} At the trial of Ms. Groce-Hopson, former Target employee Jennifer Beaton testified for the State. Beaton testified that on May 25, 2002, she was working as a guest services cashier when she heard the electronic alarm and saw a boy pushing a cart out of the store's entrance door. Upon stepping outside to investigate, she saw the boy "throwing the items into the trunk" of a car and noted that none of the merchandise was in shopping bags as would be ordinary for purchases. She called store security personnel, identified the car she had seen, and observed the boy hiding in the car. At trial, Ms. Beaton identified Ms. Groce-Hopson and Flowers as the two adults with the child at the store that day.
 {¶ 27} Justin Schenker also testified for the State, as the Assets Protection Supervisor at the Avon Commons Target store on May 25, 2002. Mr. Schenker was in charge of store security, which included monitoring the video surveillance tapes. Mr. Schenker testified that at the time in question, he responded to a call from a cashier regarding a suspected theft and one of the cashiers showed him to a green Chevy Malibu, license plate number UC ANGE 2, in which the stolen merchandise had been placed. Mr. Schenker returned to his office and used the outside video monitor to observe Flowers enter the car and drive it to a different location in the parking lot before returning to the store. Concurrently, Mr. Schenker observed, via video monitor, Ms. Groce-Hopson at the customer service desk, as he had been alerted that she may be engaging in a fraudulent return. Mr. Schenker testified that upon reviewing the surveillance video, he discovered that Ms. Groce-Hopson and Flowers "entered the store together and they were at guest services several times together" during the evening. During Mr. Schenker's testimony, the State also introduced, and the court admitted, the receipt tabulating the merchandise recovered from Ms. Groce-Hopson's car valued at $2,091.68, and the surveillance video.
 {¶ 28} This surveillance video depicts Ms. Groce-Hopson, Flowers, the boy, and a younger girl engaged in various complicit activities. Specifically, Flowers and Ms. Groce-Hopson are viewed in the electronics department, each with a partially full shopping cart, perusing the CDs and DVDs, with Flowers placing DVDs into the cart on several occasions. At one point, Ms. Groce-Hopson and Flowers walk along a DVD display with their backs to the camera. Ms. Groce-Hopson makes three separate gestures towards the display, appearing to touch or pick up a DVD each time as she continues along. Then Flowers steps back towards Ms. Groce-Hopson and appears to give her something. When she turns back towards the camera, she is seen holding at least one DVD in her left hand Ms. Groce-Hopson then places the DVD into Flower's cart and returns to her own cart.
 {¶ 29} Later, the video displays the store entrance doors, from the interior of the store. Flowers is seen entering from the outside, triggering the automatic door to open, and effectively holding it open. Meanwhile, the boy pushes a fully loaded shopping cart out through this entrance door. The next sequence, from the exterior camera sweeping the parking lot, shows the boy loading merchandise from a shopping cart into a green Chevy Malibu. Later, the camera zooms in on Flowers and the boy emerging from the car before Flowers reenters the car and drives out of the picture. Less than one minute later the video shows Flowers and the boy walk towards the Target entrance from the far left side of the parking lot. Inside the store, Flowers and the boy proceed to the customer service counter, where Flowers waits while the boy heads further into the store. About one minute later, the boy locates Ms. Groce-Hopson in the girls department, pushing a cart full of merchandise. Ms. Groce-Hopson immediately proceeds to the customer service counter, but Flowers is no longer there. Outside, the boy is then seen running into the parking lot to catch up with Flowers. They enter the car and drive away out of camera range.
 {¶ 30} Approximately seven minutes later, while the camera is on Ms. Groce-Hopson at the customer service counter, Flowers enters the store again, this time wearing a different shirt, and proceeds directly to Ms. Groce-Hopson at the counter where he waits with her for a period of time. After Flowers leaves, Ms. Groce-Hopson completes her business at the counter, reloads her shopping cart, and then exits.
 {¶ 31} Police officer Dan Fischbach testified for the State as follows. At approximately 5:00 p.m. on May 25, 2002, Officer Fischbach was dispatched to Avon Commons to respond to suspicious activity in the parking lot, but during that time was notified of the suspected shoplifting at the Target. Upon arrival, Officer Fischbach identified Flowers and, nearby, the green Chevy Malibu with license plate number UC ANGE 2. Despite some initial misrepresentation, Flowers eventually identified himself to Officer Fischbach, and stated that he was there with his girlfriend. Officer Fischbach observed the car and discovered Ms. Groce-Hopson's nine-year-old son crouched on the floorboard, hiding from view, as well as some suspected stolen merchandise in plain view. Ms. Groce-Hopson walked up at some point, and after an initial misrepresentation of who she was with, she conceded that she was with Flowers. Officer Fischbach checked the vehicle registration and confirmed that the car in question belonged to Ms. Groce-Hopson, who consented to a search of her car. Inside the car were over 100 CDs and DVDs, all in their original packaging, but no receipts or plastic shopping bags that would normally indicate an actual purchase. Although they eventually agreed that they were there together, both Flowers and Ms. Groce-Hopson denied any knowledge of the items in the car throughout the course of the inquiry. On cross examination, Officer Fischbach conceded that an occasional item may be improperly deactivated and may erroneously trigger the electronic alarm as defense council had suggested, but concluded that it would be "highly unlikely" that these 131 items had been improperly deactivated.
 {¶ 32} Upon a careful review of the record, and upon viewing the direct and circumstantial evidence in the light most favorable to the prosecution, this Court cannot conclude that the jury lost its way and created a manifest miscarriage of justice when it found Ms. Groce-Hopson guilty of complicity to commit theft and contributing to the delinquency of a minor. SeeOtten, 33 Ohio App.3d at 340. A reasonable juror could have found that, at the least, Ms. Groce-Hopson should have been aware of the conduct and circumstances occurring between her son and Flowers in and out of the Target store, that the merchandise in question was stolen, and that her actions or inactions would likely contribute to the delinquent behavior of her son as well as the theft. Furthermore, we find that a reasonable juror could infer and conclude from the set of circumstances that Ms. Groce-Hopson was complicit in the actual theft of the merchandise, that her conduct was a knowing and intentional part of the overall scheme, and that she induced, encouraged, or contributed to her son's involvement. Accordingly, we find that Ms. Groce-Hopson's convictions for theft and contributing to the delinquency of a child were not against the manifest weight of the evidence.
 {¶ 33} Ms. Groce-Hopson contends that the evidence presented was not reliable, credible or sufficient to convince the jury of her guilt. The jury in this case had the opportunity to view the witnesses' testimony and adjudge their credibility. Therefore, we must give deference to the jurors' judgment, as matters of credibility are primarily for the trier of fact. See State v.Lawrence (Dec. 1, 1999), 9th Dist. No. 98CA007118; State v.DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 34} Having found that Ms. Groce-Hopson's convictions were not against the manifest weight of the evidence, we also conclude that there was sufficient evidence to support the convictions. See Roberts, supra. Accordingly, Ms. Groce-Hopson's third and fourth assignments of error are overruled.
 III. {¶ 35} Ms. Groce-Hopson's assignments of error are overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to Appellant.
Exceptions.
Carr, P.J., Slaby, J., Concur.