OPINION
Defendant-appellant, Tony L. McMannis, appeals the March 29, 2001 judgment entry of the Franklin County Court of Common Pleas sentencing appellant to eleven months incarceration. For the reasons that follow, we affirm.
Appellant was indicted on December 8, 2000, on one count of domestic violence in violation of R.C. 2919.25. Appellant waived his right to a jury trial and, on February 1, 2001, a bench trial commenced in which appellant testified. The following facts were taken primarily from the testimony of appellant, Dianna Rowe, and Officers Donald L. Wooten and Gerald Ersham.
Appellant and Rowe lived together on and off for about eight years. Rowe testified that her relationship with appellant was abusive and they had many arguments. She testified that appellant got into jealous rages over "men talking to me, talking to men, looking at men." (Tr. 17.) Rowe testified that, prior to the events of November 1, 2000, she and appellant had argued most of the week. On November 1, 2000, Rowe testified, "I just had my fill," so she called her male friend, Steve Thompson, to come over and pick her up. (Tr. 17.) Rowe testified that she left the apartment, went to Thompson's house, had a few beers, and then returned home. Rowe testified that as soon as she walked through the door, appellant began "yelling and screaming and hitting me and throwing me around, pulling my hair and kicking me." (Tr. 18.) Rowe additionally testified that "[appellant] slapped me in the face, busted my lip, give me a black eye. I had several bruises on my arms, my back, my legs." (Tr. 33.) Rowe testified that appellant hit her about twenty-to-thirty times that night.
Appellant gave a different version of the events. He testified that upon Rowe returning home, they "smoked a couple of bowls" of marijuana, drank some beer and then had sex. (Tr. 197.) Appellant then testified that after they had sex, an argument ensued. Appellant testified that he told Rowe that he wanted her to quit her job as a construction worker and find a new job because she got high and drunk all the time with the people she worked with. Appellant testified that he told Rowe that if she did not quit smoking and drinking she would never get custody of her daughter. Appellant testified, "[Rowe] got upset. She said that's the best job that she wanted to continue working. She started slapping me and clawing me, knocked my glasses off, broke my glasses." (Tr. 177.) Appellant testified that he never struck, kicked, pushed, or scratched Rowe that night.
Rowe testified she never struck appellant that night, although appellant threatened to kill her. Rowe testified that the fight lasted three-to-four hours and, after it was over, she fell asleep. She testified that she got up the next morning and went to work like nothing happened.
Rowe testified that she was unable to perform her job because she was sore from the alleged events the night before. Rowe testified that when she got off of work, she called the police from her cell phone around 3:00 or 3:30 p.m. She testified that she had the police meet her in the Kroger's parking lot on Broad Street and Reynoldsburg-New Albany Road, which is located close to her apartment. Rowe testified that she did not want the police to meet her at her apartment because she knew appellant would be coming home. Rowe testified that when the police arrived, she gave a statement, and they took photos of her injuries.
Officers Wooten and Ersham arrived at the Kroger's parking lot. Officer Wooten testified that he spoke to Rowe and Officer Ersham took pictures of her injuries. Wooten testified that he observed that Rowe had bruising under her right eye, and a cut on the inside of her bottom lip. Wooten testified that while he was waiting in the Kroger's parking lot for appellant to get home, he ran a check and discovered that appellant had an outstanding warrant for his arrest. Officer Wooten testified that he was going to wait until appellant showed up at the apartment before he arrested him, but before he had the opportunity, he observed appellant walking across the field, across Reynoldsburg-New Albany Road, and headed towards the Kroger's lot. At that point, Officers Wooten and Ersham approached appellant and arrested him on the outstanding warrant.
On February 6, 2001, the trial court found appellant guilty of domestic violence. The trial court ordered a presentence investigation ("PSI") and sentencing was set for March 29, 2001. On March 29, 2001, the trial court sentenced appellant to eleven months in prison, ordered him to pay $500 in fines and court costs, and credited him one hundred and forty-eight days of jail time. It is from this entry that appellant appeals, raising the following four assignments of error:
 I. WHETHER THE TRIAL COURT COMMITTED PREJUDICIAL AND REVERSIBLE ERROR BY DENYING APPELLANT McMANNIS' RIGHT TO PRESENT SPECIFIC EVIDENCE OF THE ALLEGED VICTIM'S CHARACTER FOR VIOLENCE FOR THE PURPOSE OF SUPPORTING THE DEFENSE OF SELF-DEFENSE.
 II. WHETHER THE APPELLANT WAS DENIED A FAIR TRIAL AND DUE PROCESS OF LAW AS GUARANTEED BY THE OHIO CONSTITUTION AND AMENDMENTS TO THE UNITED STATES CONSTITUTION BY REASON OF THE PROSECUTOR'S MISCONDUCT BY QUESTIONING DEFENSE WITNESS AND THE APPELLANT ABOUT A DOMESTIC VIOLENCE CONVICTION IN 1992 WHEN IN FACT APPELLANT WAS NEVER CONVICTED.
 III. WHETHER APPELLANT WAS PREJUDICED BY THE COURT'S RULING PREVENTING APELLANT FROM QUESTIONING WITNESSES ABOUT THE PROSECUTING WITNESS' ADMISSION THAT SHE HAD MADE UP A CHARGE OF DOMESTIC VIOLENCE AGAINST THE APPELLANT.
 IV. WHETHER THE APPELLANT WAS PREJUDICED BY THE IMPROPER CALCULATION OF JAIL TIME CREDIT IN THE JUDGMENT ENTRY AND AT THE SENTENCING HEARING.
In his first assignment of error, appellant argues that the trial court committed prejudicial and reversible error by denying his right to present specific instances of Rowe's character of violence for purposes of supporting his claim for self-defense. Appellant argued that the trial court's error limited his ability to put on his defense and demonstrate his state of mind pursuant to Evid.R. 405(B). Evid.R. 405 provides for methods of proving character. Specifically, Evid.R. 405(B) relates to specific acts of the victim, and states:
 In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.
Pursuant to Evid.R. 405(B), the alleged victim's purported violent nature is not an essential element of self-defense, therefore, witnesses other than the defendant have no admissible basis for testifying to specific instances of violent conduct. See State v. Williamson (Sept. 12, 1996), Ross App. No. 95CA2155, unreported; State v. Baker (1993),88 Ohio App.3d 204, 209-211 (the victim's character is not an element of self-defense, therefore, specific acts of conduct offered to demonstrate the victim's violent character is not admissible). However, a defendant claiming self-defense may introduce evidence regarding the alleged victim to: (1) demonstrate the defendant's state of mind at the time of the confrontation; and (2) to demonstrate that the alleged victim was more than likely the aggressor. State v. Cuttiford (1994), 93 Ohio App.3d 546,554; Baker, at 207-209.
Appellant argued that the trial court erred in refusing to admit testimony pertaining to violent acts committed by Rowe against him where he had knowledge of her violent acts. Appellant argued that this case should be remanded to allow him to have a fair trial where he is permitted to present his defense. Appellant cites to State v. Busby (Sept. 14, 1999), Franklin App. No. 98AP-1050, unreported, where we previously held that where the trial court limits a defendant in presenting relevant evidence to his claim for self-defense, such evidentiary rulings were prejudicial and the defendant was entitled to a new trial. However, that is not the case here. A careful review of the record indicates that while the trial court originally limited appellant's ability to introduce specific instances of conduct of Rowe's violent behavior, the trial court did give appellant the opportunity to testify about specific incidents of Rowe's conduct. The record indicates that defense counsel asked appellant "[w]as there a time when Dianna [Rowe] put a cigarette out on the back of your neck?" (Tr. 164.) The state objected to this line of questioning and the trial court sustained the objection stating, "[p]ast conduct is not admissible, not even for self-defense." (Tr. 164.) The trial court further stated "[i]f you want to ask him if she used anything other than her hands, hitting, kicking, she used any tools or if she used any weapons, you are entitled to ask that question." (Tr. 168.) Defense counsel then proceeded with the following line of questioning:
 Q. HAS DIANNA ROWE EVER USED ANYTHING OTHER THAN HER FISTS OR HER OWN PERSONAL BEING TO INFLICT HARM UPON YOU?
A. SHE CLAWED ME WITH HER FINGERNAILS.
 Q. OTHER THAN HER FINGERNAILS, HAS THERE EVER BEEN A TIME WHEN SHE USED AN OBJECT TO INFLICT INJURY UPON YOU?
 A. SHE'S — THERE HAS BEEN FOUR OR FIVE TIMES. LIKE I SAY, EVERY TIME THERE IS A DOMESTIC CASE AND SELF-DEFENSE, IT KEPT HER FROM BEATING ME AND WHATEVER. I MEAN I CAN'T SAY NO OBJECTS.
Q. HAS DIANNA ROWE EVER USED AN OBJECT TO BURN YOU?
 A. YES, SHE HAS. SHE DONE IT IN FRONT OF MY DAUGHTER. SHE THROWED [sic] MY GOLF CLUBS OUT OF THE UPSTAIRS WINDOW.
* * *
 Q. SO YOU'RE SAYING THAT SHE'S THROWN YOUR PERSONAL EFFECTS INTO THE STREET?
A. YEAH, YES, SIR.
Q. WHEN DID THAT HAPPEN?
 A. 1999. I COME HOME FROM WORK, AND MY KID CALLED ME HER DAD, I AM NOT HER TRUE-BLOOD DAD, BUT HER DAUGHTER I'D COME HOME FROM WORK. I'D ASK CHRIS WHERE IS DIANNA. SHE SAID SHE WAS OVER THE TWIN CITY.
Q. WHAT'S THE TWIN CITY?
 A. IT'S A BAR DOWN ON AND I WENT OUT BACK. WE WAS PLAYING HORSESHOES. ME AND HER HUSBAND WORK TOGETHER. AND I CALLED HER AT THE BAR, TOLD DIANNA TO GET HOME. SHE CAME HOME.
 SHE WAS SCREAMING AND YELLING, CUSSING AT ME IN FRONT OF TONY, ALL THE KIDS, I TOLD HER IF SHE WANTED TO ACT LIKE THAT, TAKE IT OUT OF THE HOME, DIDN'T NEED TO DO IT IN FRONT OF EVERYBODY.
 SO WE WENT OVER HOME. THAT'S WHEN SHE START THROWING MY STUFF OUT THE WINDOW, AND I SAID THE HECK WITH IT, I AM NOT GOING TO THIS IS THE, I WAS GOING BACK OVER TONY'S, WALK UP ON THE SIDEWALK. SHE RAN BEHIND ME STUCK A CIGARETTE OUT IN MY NECK, RIGHT IN FRONT OF MY DAUGHTER, RIGHT IN FRONT OF HER KIDS.
 SHE CALLED THE LAW ON ME. THEY ARRESTED ME. [Tr. 168-170.]
* * *
 Q. HAS DIANA ROWE EVER HURT YOU TO THE EXTENT THAT YOU NEEDED MEDICAL ATTENTION?
A. YES, SIR.
Q. DID YOU SEEK MEDICAL ATTENTION?
A. NO, SIR.
Q. WHY NOT?
A. I WAS ASHAMED.
Q. WHY WERE YOU ASHAMED?
A. BECAUSE SHE HAD ABOUT TORE MY BAG OFF.
Q. AND YOU'RE REFERRING TO YOUR SCROTOM?
 A. YEAH, YEAH, SHE CLAWED ME WITH HER FINGERNAILS UP INSIDE OF ME. [Tr. 190.]
Although the trial court originally sustained the state's objection to appellant's testimony and limited him in presenting relevant evidence for his claim for self-defense, the trial court ultimately allowed appellant to testify to Rowe's specific instances of prior violent conduct. The trial court stated, "[a]nd by the way, you know where we got into the biggest disagreement about this, was over the cigarette butt in the neck. And I did let it in. It got in through his testimony. So, I really don't know what more you need to do." (Tr. 227.) Appellant was given the opportunity to present evidence, without objection from the state, regarding specific instances of Rowe's violent behavior. As such, we find that the trial court did not commit prejudicial and reversible error. Therefore, appellant's first assignment of error is not well-taken and is overruled.
In his second assignment of error, appellant asserts that he did not receive a fair trial because of the state's misconduct in questioning not only him but, also, Krystal Zumbro about a prior domestic violence arrest, in which appellant was never convicted of the offense as charged. "The test for prosecutorial misconduct is whether the prosecutor's conduct was improper and, if so, whether the conduct prejudicially affected substantial rights of the defendant." State v. Jackson (Feb. 20, 2001), Franklin App. No. 00AP-183, unreported, citing State v. Smith (2000), 87 Ohio St.3d 424, 442. The Ohio Supreme Court has held that "[t]he conduct of a prosecuting attorney during trial cannot be made a ground of error unless the conduct deprives defendant of a fair trial." State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394, quoting State v. Maurer (1984), 15 Ohio St.3d 239, 266, 15 OBR 379, 402, 473 N.E.2d 768, 793. Additionally, this court must consider the challenged conduct in the context of the entire trial. See State v. Fuller (Sept. 24, 1996), Richland App. No. 95 CA 66, unreported, citing Darden v. Wainwright (1986), 477 U.S. 168,106 S.Ct. 2464, 91 L.Ed.2d 144. Here, appellant's claim of prosecutorial misconduct fails for two reasons.
First, appellant argues that the state's line of questioning of Zumbro about appellant's 1992 conviction was improper because he was not convicted of domestic violence in 1992. Appellant argues that the state's conduct was sloppy and sinister, and it prejudiced the outcome of the trial. As pointed out by the state, however, defense counsel failed to object to the state's line of questioning of Zumbro and, as such, waived any error on these grounds absent plain error. See State v. Slagle (1992), 65 Ohio St.3d 597, 604. The failure to object to evidence at trial constitutes a waiver of any challenge on that evidence on appeal, except for plain error. State v. Robertson (1993),90 Ohio App.3d 715, 728. To constitute plain error, the error must be obvious on the record, palpable, and fundamental such that it should have been apparent to the trial court without objection. See State v. Tichon (1995), 102 Ohio App.3d 758, 767. Moreover, plain error does not exist unless the appellant establishes that the outcome of the trial clearly would have been different but for the trial court's allegedly improper actions. State v. Waddell (1996), 75 Ohio St.3d 163, 166. Notice of plain error is to be taken with utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. State v. Phillips (1995), 74 Ohio St.3d 72, 83; State v. Ospina (1992),81 Ohio App.3d 644, 647. Therefore, since defense counsel failed to object to the alleged instances of prosecutorial misconduct, the alleged improprieties are waived absent plain error, and we will review these allegations under the plain error standard.
On two separate occasions, the state asked Zumbro if she was told that in 1992, appellant was convicted of domestic violence, if that would surprise her or change her opinion about him. (Tr. 134-135.) Defense counsel failed to object to either line of questioning. Appellant has failed to demonstrate that the outcome of his trial would have been different, absent the testimony of Zumbro. Based on the testimony, we cannot find, but for the line of questioning, that the outcome of appellant's trial would have been different so as to constitute plain error. Second, appellant asserts that the state's questions posed to him about the 1992 conviction were improper because he was never convicted of domestic violence, and such questioning unduly prejudiced the trial court. Appellant testified that the incident was both his fault and that of his ex-wife's. He further testified that he plea-bargained to a lesser charge. We note that this case was tried before the bench. In a bench trial, trial judges are presumed to rely only upon relevant, material, and competent evidence in arriving at their judgments. State v. Richey (1992), 64 Ohio St.3d 353, 362; State v. Post (1987),32 Ohio St.3d 380, 384. In order to defeat this presumption, it must affirmatively appear on the record that the trial court did rely on irrelevant evidence. State v. White (1968), 15 Ohio St.2d 146, 151. Here, there is no indication in the record that the trial court relied on evidence that would have unduly prejudiced the outcome of the case.
In this case, the prosecution's conduct was proper. Careful review of the record indicated that it was defense counsel who introduced evidence of appellant's prior criminal convictions. (Tr. 163-164.) "Whenever a defendant testifies, he may be impeached by evidence of his prior criminal convictions, provided the evidence is more probative than prejudicial." State v. Webber (Aug. 23, 2000), Medina App. No. C.A. No. 3001-M, unreported; State v. Wright (1990), 48 Ohio St.3d 5, 8 (when a defendant offers evidence of his good character, that opens the door for the state to inquire into defendant's prior criminal convictions).
Here, appellant opened the door for the state to question him in depth about his criminal convictions. During his direct testimony, appellant represented to the court that he was only involved in domestic disputes with Rowe. After his testimony, the state cross-examined appellant about a prior charge that involved his ex-wife, to which appellant plea-bargained to a lesser charge. Thus, cross-examination by the state was proper to impeach. Appellant has failed to establish that the state's conduct was improper and that it prejudicially affected his substantial rights. Appellant's second assignment of error is not well-taken and is overruled.
In his third assignment of error, appellant asserts that he was prejudiced when the trial court did not allow him to question Rebecca McMannis, appellant's daughter, about Rowe's admission that appellant's 1999 domestic violence conviction was untrue. During direct examination of Rebecca McMannis, defense counsel attempted to impeach Rowe's earlier testimony concerning inconsistent statements allegedly made to Rebecca McMannis about the domestic violence charge:
 Q. WHAT WAS YOUR, IN YOUR OPINION, WHAT WAS YOUR OPINION OF THAT DOMESTIC VIOLENCE CHARGE AGAIN?
 A. IT WAS — SHE HAD ADMITTED TO ME THAT IT WAS TOTALLY UNTRUE.
MR. WELCH: YOUR HONOR, OBECTION, YOUR HONOR, HEARSAY.
THE COURT: IT'S SUSTAINED. [Tr. 74.]
Appellant raised, for the first time on appeal, that Rowe is a party opponent under Evid.R. 801(D)(2) and, as such, he should have been afforded the opportunity to elicit testimony from Rebecca McMannis regarding Rowe's prior inconsistent statement. Evid.R. 801(D)(2) provides:
 (D) Statements Which Are Not Hearsay. A statement is not hearsay if:
* * *
 (2) Admission by party-opponent. The statement is offered against a party and is (a) his own statement, in either his individual or a representative capacity, or (b) a statement of which he has manifested his adoption or belief in its truth, or (c) a statement by a person authorized by him to make a statement concerning the subject, or (d) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, or (e) a statement by a coconspirator of a party during the course and in furtherance of the conspiracy upon independent proof of the conspiracy.
Appellant believes that since Rowe is a party opponent, any admission made by her to Rebecca McMannis is not hearsay and, is therefore, admissible. To the contrary, Rowe is the prosecuting witness. Section20, Article IV of the Ohio Constitution provides that "all prosecutions shall be carried on, in the name, and by the authority, of the state of Ohio." Therefore, Rowe, as the prosecuting witness, is not the party opponent in this case. State v. Dinwiddie (Sept. 16, 1987), Summit App. No. 12876, unreported.
In the alternative, appellant could have brought to the attention of the trial court evidence of the prior inconsistent statement made by Rowe to impeach her testimony. Before appellant would be entitled to use such impeachment procedure, however, a proper foundation must be laid pursuant to Evid.R. 613(B), which provides:
 * * * Extrinsic evidence of prior inconsistent statement by a witness is admissible if both of the following apply:
 (1) If the statement is offered solely for the purpose of impeaching the witness, the witness is afforded a prior opportunity to explain or deny the statement and the opposite party is afforded an opportunity to interrogate the witness on the statement or the interests of justice otherwise require;
 (2) The subject matter of the statement is one of the following:
 (a) A fact that is of consequence to the determination of the action other than the credibility of a witness;
 (b) A fact that may be shown by extrinsic evidence under Evid. R. 608(A), 609, 616(A), 616(B) or 706;
 (c) A fact that may be shown by extrinsic evidence under the common law of impeachment if not in conflict with the Rules of Evidence.
Careful review of the record revealed that, on cross-examination of Rowe, appellant did not question Rowe about the alleged prior inconsistent statement. Appellant merely asked Rowe if she had given a written statement to the police and then asked her to read the narrative for the court. Thus, a proper foundation was not laid. See State v. Hunter (Oct. 10, 1984), Lorain App. No. 3655, unreported. Appellant's third assignment of error is without merit and is not well-taken.
In his fourth and final assignment of error, appellant asserts that he was prejudiced because the trial court improperly calculated his jail-time credit. On March 29, 2001, at appellant's sentencing hearing, defense counsel mentioned to the court that according to the PSI, appellant was only credited one hundred forty-eight days up to February 23, 2001. Appellant argues that he is entitled to a credit of thirty-five additional days from February 23, 2001 to March 29, 2001. Careful review of the record indicates that appellant was arrested on November 2, 2000, and was sentenced on March 29, 2001. After this court calculated the number of days from the time of his arrest to the date of his sentencing, we determined that the trial court properly credited appellant one hundred forty-eight days of jail time. Accordingly, we conclude that the trial court did not commit prejudicial and reversible error and, as such, appellant's fourth assignment of error is not well-taken and is overruled.
For the foregoing reason, appellant's four assignments of error are overruled, and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
BRYANT, P.J., and McCORMAC, J., concur.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.