[Cite as *Taylor v. Taylor*, 2013-Ohio-2341.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY

LARRY J. TAYLOR

      Plaintiff-Appellant

v.

SUSAN M. TAYLOR

      Defendant-Appellee

Appellate Case No.    2012-CA-16

Trial Court Case No.   2011-DR-296

(Civil Appeal from Common
Pleas Court, Domestic Relations)

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of June, 2013.

. . . . . . . . . . .

THOMAS J. BUECKER, Atty. Reg. No. 0020487, 306 W. High Street, P.O. Box 1215, Piqua, Ohio 45356
      Attorney for Plaintiff-Appellant

FRANK J. PATRIZIO, Atty. Reg. No. 0055468, 123 Market Street, P.O. Box 910, Piqua, Ohio 45356
      Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Plaintiff-Appellant, Larry Taylor, appeals from a judgment and decree of divorce filed in a divorce action between Larry and Susan Taylor.[1] Larry presents ten assignments of error, which challenge: (1) the magistrate's failure to continue the trial when Larry failed to appear for the final divorce hearing; (2) the trial court's failure to consider Larry's prior testimony at a contempt hearing; (3) the dates the court used to calculate the beginning and the end of the marriage; (4) the court's alleged failure to consider Susan's financial misconduct; (5) the alleged inequitable division of assets; (6) the magistrate's examination of Larry's witness; (7) the amount of spousal support and retirement benefits awarded to Susan; (8) the court's failure to allocate any marital debt to Susan; (9) the court's award to Susan of what amounts to the entirety of Larry's retirement income; and (10) the court's failure to consider Larry's testimony about how the proceeds of a farm sale was used to pay marital debt, as well as the court's acceptance of Susan's "unsupported" testimony about financial misconduct.

{¶ 2} We conclude that no error occurred in the trial court proceedings. Accordingly, the judgment of the trial court will be affirmed.

## I. Facts and Course of Proceedings

{¶ 3} In July 2011, Larry filed a complaint seeking a divorce from his wife, Susan. At the time the divorce was filed, Larry was employed as a custodian for Miami East Local School District and was also employed part-time as a farmer. Susan was employed part-time at Liesse Dry Cleaners.

{¶ 4} Susan filed an answer and counterclaim for divorce in September 2011. Both

---

[1] For purposes of convenience, the parties will be referred to by their first names.

parties received restraining orders preventing the other from disposing of financial assets.

{¶ 5}    In October 2011, the trial court ordered Larry to pay $1,000 in monthly spousal support to Susan.  The court also ordered Larry to provide Susan's attorney with a complete accounting of farm operation income and expenses on a monthly basis.  In addition, the court ordered any net farm income to be deposited into an account belonging to Larry's attorney.

{¶ 6}    In December 2011, Susan filed a motion for contempt, alleging that Larry had failed to account for any of the farm income for 2011.  Susan further claimed that Larry had hidden assets and had failed to pay U.S. Bank the full amount of money owed to the bank.

{¶ 7}    The contempt hearing was held on January 30, 2012, and Larry testified at the hearing.  After hearing the evidence, the magistrate found Larry in contempt.  The magistrate noted that Larry had failed to provide a monthly accounting, and had also placed crop proceeds in the name of others to avoid paying the bank money that he owed.  Additionally, the magistrate concluded that Larry had deprived Susan of the crop proceeds.  The magistrate imposed a jail sentence, a monetary sanction, and a fine, but included several means for Larry to purge the sentence and fine.  Larry did not file objections to the magistrate's decision.

{¶ 8}    Larry filed a motion in January 2012, asking the court to modify the support order because he had been terminated from his position as a custodian in December 2011.  Subsequently, Susan filed another motion for contempt, based on Larry's failure to pay spousal support as ordered.

{¶ 9}    The final divorce hearing was set for April 10, 2012.  On the day before the final hearing, Larry's attorney filed a motion to withdraw as counsel, stating that communication with his client had been difficult, and that he had not been able to adequately prepare for trial.

The court set a hearing on the motion for April 10, 2012, the same day as the scheduled divorce hearing.

{¶ 10}    Larry did not appear for the final divorce hearing on April 10, 2012.  At the final hearing, the magistrate asked Larry's attorney if he wished to proceed with the motion to withdraw.  Larry's attorney stated that he did wish to proceed with the motion, and discussed difficulties he had experienced in communicating with his client.  However, the attorney then withdrew his motion and said that he would remain as counsel and do the best that he could.

{¶ 11}    After the parties stipulated to various documents and to the grounds for divorce, the magistrate heard testimony from Susan and from Larry's mother, Clara Taylor, who testified on Larry's behalf.  The parties also agreed that the magistrate could consider the motion to modify support based on the evidence given at the hearing.

{¶ 12}    In May 2012, the magistrate filed a decision, in which he concluded that the marriage began on June 30, 1975, and ended on the date of the divorce hearing.  In addition, the magistrate found that Larry had committed financial misconduct by throwing out about $7,996 worth of Susan's jewelry and by failing to account for farm income and insurance proceeds.  The magistrate also found that Larry had voluntarily reduced his income as a custodian and had voluntarily elected not to farm, even though he had many acres available to farm.  In order to rectify the financial misconduct, the magistrate recommended that Susan be awarded the entirety of Larry's accumulated sick leave, personal leave, and vacation leave from Miami East Local School District, as well as a 17-acre tract owned by the parties.  The magistrate further recommended that Larry be required to pay $1,000 per month toward the amount of crop insurance proceeds that Larry had wrongfully taken, until the sum was paid, and that Larry also

pay $1,000 per month in spousal support.

{¶ 13}  Finally, the magistrate preserved the support arrearage, which was approximately $5,200 at the time of the hearing, and ordered that the parties each receive 50% of Larry's pension benefit with the State School Employees Retirement Fund, which was scheduled to begin on June 1, 2012, with a monthly benefit of $1,910.43.

{¶ 14}  Larry filed 27 objections to the magistrate's decision, which were framed mostly in the form of final argument, rather than specific legal or factual objections.  After considering the objections, the trial court agreed with the marital dates assigned by the magistrate and the finding of financial misconduct.  The court modified the magistrate's decision slightly, by ordering that in lieu of specific payment for the financial misconduct, Larry should transfer title of the 17-acre property to Susan.  The court retained the spousal support award and the breakdown of Larry's pension benefit.  Larry appeals from the final judgment and decree of divorce.

## II.   Did the Magistrate Err in Failing to Continue the Trial?

{¶ 15}  Larry's First Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence by Failing to Continue the Matter when Plaintiff Failed to Show and His Counsel filed a Motion to Withdraw.  The Record Would Suggest that the Magistrate Went out of His Way to Find Fault with the Plaintiff with No Justification.

{¶ 16}  Under this assignment of error, Larry contends that his attorney asked in

chambers for a continuance on the day of trial, due to his client's absence, but the magistrate refused. Larry notes that the parties failed to make a record on the point, and contends that his counsel subsequently filed a motion to withdraw in hopes that the trial would be continued. According to Larry, the magistrate's failure to continue the matter, the magistrate's questioning of Larry's mother during the trial, and the magistrate's issuance of a substantial spousal support award after hearing of Larry's financial problems in the contempt hearing show a lack of fairness and impartiality on the magistrate's part.

{¶ 17}   As a preliminary matter, we note that these assertions misstate the record. The temporary support order of $1,000 was issued in October 2011, and the contempt hearing that was held several months later did not deal with the issue of spousal support. Instead, it dealt with Larry's alleged failure to provide information about his farming income and expenses. The spousal support that was ultimately ordered on a permanent basis was the same amount as the support that had been temporarily ordered. For reasons that will be discussed later, the spousal support order was warranted in view of the facts.

{¶ 18}   We further note that Larry failed to file objections to the magistrate's contempt decision. Civ.R. 53(D)(3)(b)(iv) states that "[e]xcept for a claim of plain error, a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b)." Larry's failure to object "deprived the trial court of the opportunity to correct the alleged errors and * * * waived [his] right to appeal the findings and conclusions contained in the decision." (Citations omitted.) *Bowers v. Bowers*, 2d Dist. Darke No. 1699, 2007-Ohio-1739,

¶ 6. Larry has not raised plain error with respect to the contempt hearing, and we will not consider any issues that relate to that hearing.

{¶ 19} Moreover, we cannot consider the alleged request for a continuance because it is not of record. The request, according to Larry, occurred in chambers before trial, and no record was made of the request. It is well settled that "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter." *State v. Ishmail,* 54 Ohio St.2d 402, 377 N.E.2d 500 (1978), paragraph one of the syllabus.

{¶ 20} Regarding the motion to withdraw, Larry has again misstated the record. The docket indicates that the motion to withdraw was filed on April 9, 2010, which was the day before the final divorce hearing. *See* Doc. #67. Consequently, the motion could not have been filed in response to the magistrate's alleged refusal, on the day of trial, to continue the case.

{¶ 21} Trial courts do have a duty "to assure that a client shall not be prejudiced as a result of the withdrawal of counsel." (Citations omitted.) *Bennett v. Bennett*, 86 Ohio App.3d 343, 347, 620 N.E.2d 1023 (8th Dist.1993). However, the magistrate did not violate this duty.

{¶ 22} The docket indicates that the trial date was continued a number of times and that the court filed an entry on March 19, 2012, setting the trial for April 10, 2012. Larry failed to appear for trial on the scheduled date, of his own volition. The magistrate did indicate during the hearing that the matter would be reconvened if Larry's absence were due to an event like a hospitalization. However, nothing was ever presented to the magistrate to indicate that such an event caused Larry's absence.

{¶ 23} As an additional matter, we note that the magistrate did not actually rule on the

motion to withdraw. Instead, Larry's attorney withdrew the motion and elected to proceed with the case in his client's absence. Larry was, therefore, not prejudiced, except by his own choice not to appear for the scheduled trial.

{¶ 24} Our review of the record indicates that the magistrate did ask questions of Susan and of Larry's mother. However, this was permissible. "Evid.R. 614(B) permits a trial judge to interrogate a witness as long as the questions are relevant and do not suggest a bias for one side or the other. Absent a showing of bias, prejudice, or prodding of the witness to elicit partisan testimony, it is presumed that the trial court interrogated the witness in an impartial manner in an attempt to ascertain a material fact or develop the truth." (Citations omitted.) *State v. Blankenship,* 102 Ohio App.3d 534, 548, 657 N.E.2d 559 (12th Dist.1995). Furthermore, "[a] trial court's interrogation of a witness is not deemed partial for purposes of Evid.R. 614(B) merely because the evidence elicited during the questioning is potentially damaging to the defendant." (Citation omitted.) *Id.*

{¶ 25} After reviewing the record, we see no evidence of bias. The magistrate initially questioned Susan about the ownership and status of land that Larry had been farming. The magistrate then inquired into these matters during the examination of Larry's mother, Clara Taylor. The evidence on these points was not particularly clear, and the magistrate's questions were intended to clarify the somewhat confusing testimony.

{¶ 26} According to the evidence presented at trial, Larry and Susan lived on 152 acres owned by Larry's mother, who also owned another 75 acres. About 180 acres of this land were tillable, and Larry had farmed that land for a number of years, paying "cash rent" per acre to his mother to farm it.

{¶ 27}    The 152-acre parcel and 20 acres of the 75 acre parcel had been placed in an irrevocable trust, with the land belonging to Clara during her lifetime.   Upon her death, the land in the trust would pass to Larry and his brother in equal shares.   The land was valued at a minimum of $4,000 per acre, meaning that Larry's interest in the property would be worth approximately $344,000.   Half of the remaining 55 acres had been placed in a family trust, and Clara had retained outright ownership of the other half.   Again, the property in the family trust would pass to Larry and his brother upon Clara's death.   Larry's interest in this land would be worth around $55,000.

{¶ 28}    In addition, Larry and his mother had purchased an additional 68 acres several years before the divorce.   Until 2001, Larry and his father, Orville, had farmed this land together, and had split the taxes and mortgage payments.   After that time, Larry and Susan made the payments on the 68-acre parcel.   In 2009, Clara deeded her interest in the property to Larry.

{¶ 29}    At some point, Larry and Susan sold 20 acres of the 68-acre parcel, and then, in June 2011, they sold the remaining 48 acres.   In exchange, Larry received a 17-acre parcel valued at $90,000, and $89,424.25 in cash.    $26,000 of the money was used to pay John Deere Credit and an outstanding bill to the Internal Revenue Service.   However, Larry kept the remainder of the money, or $63,424.25.   This occurred shortly before Larry filed for divorce, and Susan did not know what had happened to the money.

{¶ 30}    In fiscal year 2010, the year before the divorce was filed, Larry grossed about $157,000 from his farming activity, with a net profit, before depreciation, of $46,531.   This was based on production of about 6,377 bushes of soybeans and 18,853 bushels of corn.   In the fall of 2011, after the divorce was filed, Larry claimed to have grossed only about $80,000 from the

production of 2,152 bushels of soybeans and 9,594 bushels of corn. Larry sold crops in his mother's name and in the name of another unrelated individual in an apparent attempt to conceal the amount of money he had received from selling crops. He also collected about $26,000 in crop insurance proceeds that he concealed from Susan.

{¶ 31} Larry also decided that he would not farm his mother's land in 2012. Clara at first refused to provide the name of the individual who intended to farm her land, but then admitted that Larry had told her to lease it to Frank Clark. Clara further admitted that the situation was such that "Larry runs the operation and you do what he tells you." April 10, 2012 Trial Transcript, p. 136.

{¶ 32} In view of the complicated nature of the property transactions and the evidence pointing to Larry's concealment of assets, the magistrate did not demonstrate bias by asking the witnesses questions to clarify the situation and ascertain the truth.

{¶ 33} In addition to challenging the trial court's decision for abuse of discretion, Larry has included a manifest weight challenge with most of his assignments of error. In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Supreme Court of Ohio concluded that civil cases should be governed by the manifest weight standards outlined in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997). *Id.* at ¶ 17. Thus, in civil cases, "[w]hen a [judgment] is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No.

25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 34} In *Eastley*, the Supreme Court of Ohio also stressed that:

In weighing the evidence, the court of appeals must always be mindful of the presumption in favor of the finder of fact.

" '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *

If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Eastley* at ¶ 21, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, which in turn quotes 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978) (Incorrect quotation mark omitted.)

{¶ 35} In view of the above discussion, and after applying the standards dictated by the Supreme Court of Ohio, we conclude that the judgment of the trial court was not against the manifest weight of the evidence. The trial court did not clearly lose its way and create a manifest miscarriage of justice. Accordingly, the First Assignment of Error is overruled.

### III.   Did the Trial Court Err in Refusing to Consider

### Testimony From the Contempt Hearing?

{¶ 36}    Larry's Second Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence when the Trial Court Failed to Consider the Prior Testimony Heard by the Magistrate and for which a Transcript Was Provided to the Trial Court when the Plaintiff/Husband Did Appear and Testify on the Financial Issues of the Parties.

{¶ 37}    As was noted, Larry appeared at the contempt hearing and testified about his farm income.   Larry notes that he provided a transcript of this testimony to the trial court after he filed objections to the magistrate's decision.   Larry, therefore, argues that the trial court erred in failing to consider this testimony.

{¶ 38}    The trial court refused to consider the testimony from the contempt hearing because the transcript was not filed until after the final divorce hearing.   The trial court observed that Larry did not appear for the divorce hearing and was attempting to belatedly use his testimony in the contempt hearing as evidence, when it had not been presented to the magistrate during the trial.

{¶ 39}    We agree with the trial court.   Civ.R. 53(D)(3)(b)(iii) states that "[a]n objection to a factual finding, whether or not specifically designated as a finding of fact under Civ.R. 53(D)(3)(a)(ii), shall be supported by a transcript of all the evidence submitted to the magistrate relevant to that finding * * *."   As the trial court noted, the transcript of the prior hearing was not submitted to the magistrate for consideration at the final hearing.

**{¶ 40}** Civ.R. 53(D)(4)(d) further provides that:

If one or more objections to a magistrate's decision are timely filed, the court shall rule on those objections. In ruling on objections, the court shall undertake an independent review as to the objected matters to ascertain that the magistrate has properly determined the factual issues and appropriately applied the law. Before so ruling, the court may hear additional evidence but may refuse to do so unless the objecting party demonstrates that the party could not, with reasonable diligence, have produced that evidence for consideration by the magistrate.

**{¶ 41}** Larry did not ask the trial court to hear additional evidence. Even if Larry had made such a request, the record indicates that Larry could have presented his own testimony at the final divorce hearing if he had used reasonable diligence. In fact, the magistrate indicated that he would hear additional testimony if Larry's absence were due to hospitalization. No attempt was made, however, to add further evidence, either before the magistrate or the trial court. Consequently, the trial court did not abuse its discretion in refusing to consider the testimony from the contempt hearing.

**{¶ 42}** Furthermore, based on the above discussion, the judgment of the trial court was also not against the manifest weight of the evidence. *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 17. The trial court did not clearly lose its way and create a manifest miscarriage of justice. *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8.

**{¶ 43}** Accordingly, the Second Assignment of Error is overruled.

IV. Did the Trial Court Err in Determining the Duration of the Marriage?

**{¶ 44}** Larry's Third Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence when the Trial Court Erroneously Found a Continuation of this Marriage in spite of the Parties' Divorce in 1987 and Remarriage in 2003.

**{¶ 45}** Under this assignment of error, Larry contends that the trial court abused its discretion by finding a continuation of the marriage after the parties divorced in 1987 and then remarried in 2003.

**{¶ 46}** The magistrate held that the duration of the marriage was from June 20, 1975, through the date of the divorce hearing on April 10, 2012. The parties originally married in 1975, divorced in 1988, and then remarried in 2003.[2] In this regard, the magistrate concluded that the parties had never financially separated, and that they had remained together and had raised their children as a family after the first divorce decree was issued in 1988. The trial court agreed with the magistrate.

**{¶ 47}** R.C. 3105.171(A)(2) defines "during the marriage" as "whichever of the following is applicable":

(a) Except as provided in division (A)(2)(b) of this section, the period of time from the date of the marriage through the date of the final hearing in an action for divorce or in an action for legal separation;

---

[2] Larry indicates in his brief that the parties were divorced in 1987, but the magistrate's decision indicates that the decree of divorce in the first action was filed on February 16, 1988. For purposes of clarity, we will use the year 1988, rather than 1987.

(b) If the court determines that the use of either or both of the dates specified in division (A)(2)(a) of this section would be inequitable, the court may select dates that it considers equitable in determining marital property. If the court selects dates that it considers equitable in determining marital property, "during the marriage" means the period of time between those dates selected and specified by the court.

{¶ 48} "A trial court's determination of the duration of the marriage is reversible only if it constitutes an abuse of discretion." (Citations omitted.) *Bertram v. Bertram*, 2d Dist. Clark No. 2007-CA-135, 2009-Ohio-55, ¶ 58. "A trial court abuses its discretion when the court's attitude was unreasonable, arbitrary, or unconscionable." *Papp v. Papp*, 2d Dist. Montgomery No. 25333, 2013-Ohio-506, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 49} We see no abuse of discretion on the part of the trial court. Susan testified that although the parties had divorced, they had never separated and continued to act as if they were married, raising their children together and holding themselves out as husband and wife in the community, even during the time they were divorced. The parties remarried in 2003 partly for purposes of health insurance, but also because they wanted to remarry. After the remarriage, they continued to reside together, take vacations together, and act for all purposes as husband and wife.

{¶ 50} In *Ward v. Ward*, 9th Dist. Summit No. 26372, 2012-Ohio-5658, the Ninth District Court of Appeals considered whether the trial court had erred in using a date prior to the parties' ceremonial marriage for purposes of deciding the duration of the marriage under R.C.

3105.171(A)(2).    The trial court held that "May 16, 2003, constituted the first day of the period 'during the marriage' because the parties 'were becoming financially entangled as if they were married' as of that date."    *Id*. at ¶ 26.    However, the parties were not actually married until July 23, 2005.    *Id.* at ¶ 23.

{¶ 51}    The Ninth District Court of Appeals concluded that using the 2003 date was "improper and would effectively resurrect common law marriages after the legislature abolished them in 1991."    *Id.* at ¶ 27.    The court also noted that "[o]nly in the case of a common law marriage established and not terminated prior to the date of the statute abolishing common law marriages would a date other than the ceremonial date of the marriage be a viable choice."    *Id.*

{¶ 52}    This conclusion is consistent with R.C. 3105.12(B)(2), which states that "Common law marriages that occurred in this state prior to October 10, 1991, and that have not been terminated by death, divorce, dissolution of marriage, or annulment remain valid on and after October 10, 1991."    In the case before us, Susan's testimony established that a common law marriage occurred prior to 1991 and was not terminated by one of the methods listed in R.C. 3105.12(B)(2).    "[A] party attempting to prove a common law marriage need not present direct evidence of an agreement to marry; such an agreement may also be established by evidence of cohabitation and a reputation in the community as a married couple."    *Reyes v. Vasquez*, 6th Dist. Lucas No. L-04-1133, 2005-Ohio-2948, ¶ 37, citing *Nestor v. Nestor*, 15 Ohio St.3d 143, 145, 472 N.E.2d 1091 (1984).    Accordingly, the trial court did not abuse its discretion in holding that the duration of the marriage was from 1975 through the date of the final divorce hearing. There was evidence to support the court's decision, and it was not unreasonable, arbitrary, or capricious for the court to use the dates that it selected.

**{¶ 53}** Furthermore, in view of the above discussion, the judgment of the trial court was also not against the manifest weight of the evidence. *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 17. The trial court did not clearly lose its way and create a manifest miscarriage of justice. *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8.

**{¶ 54}** Larry's Third Assignment of Error is overruled.

### V. Did the Trial Court Err in its Findings on Financial Misconduct?

**{¶ 55}** Larry's Fourth Assignment of Error states as follows:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence when It Ignored the Admitted Financial Misconduct of the Defendant, Wife, which Caused the Termination of the Marriage and Further Accepted Unsupported Testimony Regarding the Alleged Financial Misconduct of Plaintiff, Husband. Defendant's Testimony Was Speculative and It Is Understood that the Court Wrongfully Also Relied on Statements of Defendant's Counsel as Testimony in the within Cause.

**{¶ 56}** Under this assignment of error, Larry argues that Susan's financial misconduct caused the divorce, and that there was no evidence of hidden money. We disagree.

**{¶ 57}** R.C. 3105.171(E)(4) states that:

If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property.

**{¶ 58}** "The financial misconduct statute should apply only if the spouse engaged in some type of wrongdoing (i.e., wrongful scienter). 'Typically, the offending spouse will either profit from the misconduct or intentionally defeat the other spouse's distribution of marital assets.' Financial misconduct involves some element of profit or interference with another's property rights." (Citations omitted.) *Feldmiller v. Feldmiller*, 2d Dist. Montgomery No. 24989, 2012-Ohio-4621, ¶ 18. A trial court's division of property is reviewed for abuse of discretion. *Parker v. Kohl-Parker*, 2d Dist. Montgomery No. 21760, 2007-Ohio-4895, ¶ 7.

**{¶ 59}** As was noted earlier, Larry retained about $63,424 from the sale of 48 acres in June 2011. This money was never accounted for. Larry also kept more than $26,000 in crop insurance proceeds that he attempted to conceal from Susan. In addition, Larry kept $80,000 in farm proceeds for 2011 and even had checks issued to third parties in order to conceal these proceeds. Finally, Larry threw out almost $8,000 worth of Susan's jewelry. In view of Larry's financial misconduct with respect to the farm income, the insurance proceeds, and the jewelry, the trial court ordered Larry to convey the 17-acre property to Susan in lieu of paying her cash for the misdeeds. The 17-acre property was worth about $90,000 and was not currently encumbered. However, the parties owed substantial amounts for farm equipment and for an outstanding loan with U.S. Bank.

**{¶ 60}** The trial court did not act arbitrarily, unreasonably, or unconscionably in concluding that Larry had committed financial misconduct, as the record supports this finding. The trial court also observed that, unfortunately, neither party would be left with much in the way of assets after the foreclosures of their house and the farm property had run their course. Thus, although Susan received the 17-acre property due to Larry's financial misconduct, she is unlikely

to see financial gain, due to the outstanding debts of the parties.

{¶ 61} Larry also argues that Susan admitted her own financial misconduct prior to the divorce. However, as the trial court noted, the evidence in this regard was vague. Susan indicated that she had incurred overdraft charges on their account between January and July 2011. However, she also said that this was caused by her oversight in paying bills before the money was in the bank. There is no evidence of intentional wrongdoing on Susan's part.

{¶ 62} Furthermore, based on the above discussion, the judgment of the trial court was also not against the manifest weight of the evidence. *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 17. The trial court did not clearly lose its way and create a manifest miscarriage of justice. *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8. The Fourth Assignment of Error, therefore, is overruled.

VI. Did the Trial Court Err in Dividing the Assets and Liabilities?

{¶ 63} Larry's Fifth Assignment of Error is as follows:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence in Dividing the Assets and Liabilities of the Parties' [sic] which Resulted in a Total Inequitable Division of the Assets with No Assets of Any Value Going to the Plaintiff and All Marital and Non-Marital Assets Going to the Defendant/Wife.

{¶ 64} Under this assignment of error, Larry contends that the trial court abused its discretion by inequitably dividing the assets and liabilities of the parties.

{¶ 65} R.C. 3105.171(C)(1) requires an equal division of marital property, except as

otherwise provided in divisions (C) or (E). In this regard, R.C. 3105.171(C)(1) states that "[i]f an equal division of marital property would be inequitable, the court shall not divide the marital property equally but instead shall divide it between the spouses in the manner the court determines equitable."

{¶ 66} Furthermore, R.C. 3105.171(E)(4) allows courts to make distributive awards or to provide a greater share of marital property in cases of financial misconduct. Thus, allocating the 17-acre parcel of land to Susan because of Larry's financial misconduct was appropriate, even if it resulted in an unequal distribution of property. We also note that many points Larry makes are based on exhibits and testimony from the contempt hearing, which the trial court refused to consider.

{¶ 67} Based on the evidence regarding debt, the debt was not allocated unfairly. The testimony from the final divorce hearing indicated that Susan is liable on the loan debt to U.S. Bank, which was more than $97,000. See Exhibit R, admitted at the April 10, 2012 Hearing. After payment of this debt, there will likely be little equity, if any, remaining in the 17-acre parcel. As the trial court noted, "neither party will be left with much in assets after the foreclosures of the house and farm property run its course." August 10, 2012 Decision, Doc. #81, p. 5. In addition, the trial court noted that the parties had agreed to be equally responsible for their children's student loans.

{¶ 68} Larry was awarded a tractor and a dump truck, valued at a total of $35,000. Susan indicated there were debts associated with each, but Larry did not provide evidence of the amount of any debt. Susan was not given any interest in these items. Larry was also permitted to keep all household items, other than the Longaberger basket collection, which was never

specifically valued, and some small items like clothing, decorative items, and a few minor pieces of furniture that Susan wished to retain.

{¶ 69} The trial court also divided Larry's pension equally, which was appropriate since the pension was entirely earned during the marriage. "Retirement benefits or the right to receive retirement benefits accumulated during the marriage are marital property, which the court must equitably divide and distribute between husband and wife in a divorce. The court has broad discretion in dividing the benefit. An equal division is presumed under the statute to be an equitable division." *Layne v. Layne*, 83 Ohio App.3d 559, 564, 615 N.E.2d 332 (2d Dist.1992), citing R.C. 3105.171(A)(3)(a)(i).

{¶ 70} In view of the limited assets of the parties and Larry's financial misconduct, the trial court did not act arbitrarily, unreasonably, and unconscionably in allocating the assets and liabilities.

{¶ 71} Additionally, based on the above discussion, which shows that the trial judge did not clearly lose his way and create a manifest miscarriage of justice, the judgment of the trial court was not against the manifest weight of the evidence. *Eastley*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 17; *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8. The Fifth Assignment of Error is overruled.

VII. Did the Magistrate Err in Questioning Witnesses?

{¶ 72} Larry's Sixth Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Erred in Conducting It's [sic] Own Examination of the Plaintiff's Witnesses and

Addressing Issues Not Even Addressed or Suggested by Defendant/Wife, or Her Counsel. The Trial Court on Its Own, Questioned Plaintiff's Mother about Plaintiff's Right of Inheritance. The Court Made No Such Inquiry into Defendant's Right of Inheritance. This Resulted in a Prejudicial Effect to the Plaintiff/Husband. This Questions the Biased Nature of the Magistrate in an Effort to Reach a Fair and Equitable Decision. The Trial Court Further Erred in Continuing to Allow Defense Counsel to Inquire into Evidence, which Was Not Covered on Direct Examination Regarding Monies Being Spent at Casinos.

{¶ 73}   Larry contends under this assignment of error that the magistrate erred in questioning witnesses and in allowing defense counsel to inquire into evidence that was not covered during direct examination. We have already concluded, in connection with the First Assignment of Error, that the Magistrate's questions were relevant and do not suggest a bias for one side. *See* Evid.R. 614(B). As was noted, the testimony lacked clarity at times, and the magistrate was simply trying to clarify matters.

{¶ 74}   Larry also challenges the fact that the magistrate allowed testimony about matters, like gambling, that were not covered during Susan's direct examination. Larry's counsel did not object to this during the trial, and the any error is waived, other than plain error. *See, e.g.*, *State v. Robertson*, 90 Ohio App.3d 715, 728, 630 N.E.2d 422 (2d Dist.1993).

{¶ 75}   Even if we were to consider this issue under a plain error analysis, there was no error, let alone plain error. In this regard, we note that the order of trial testimony was somewhat unusual, due to the procedural posture and Larry's failure to appear for trial. Larry was the plaintiff, and his attorney called Susan as the first witness. After Susan's

cross-examination by Larry's attorney was completed, Susan's own attorney called her on direct examination. However, before Larry's attorney had an opportunity to cross-examine Susan again, her testimony was interrupted so that the court could hear testimony from Larry's mother, Clara Taylor.

{¶ 76} After Clara's direct and cross-examinations were finished, Susan was recalled to the stand, and was cross-examined again by Larry's attorney. See April 10, 2012 Trial Transcript, pp. 154-187. During this cross-examination, Larry's attorney asked Susan about gambling that the parties had done. *Id.* at pp. 168 and 171. After the cross-examination was concluded, Susan's attorney then conducted a very brief re-direct examination, limited to debt that was allegedly owed to Clara Taylor. *Id.* at pp.187-188. The debt issue had been raised during the most recent cross-examination by Larry's attorney. *Id.* at 187. Susan's attorney did not ask her about gambling debts on re-direct examination, although he would have been entitled to discuss the matter, since it was raised by Larry's attorney on the second cross-examination. Accordingly, we see no error, let alone plain error.

{¶ 77} The Sixth Assignment of Error is overruled.

### VIII. Did the Trial Court Err in Ordering Spousal Support?

{¶ 78} Larry's Seventh Assignment of Error states as follows:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence by Ordering the Plaintiff, Husband[,] to Pay Spousal Support Far in Excess of the Defendant/Wife's Testimony as to Her Needs and Far in Excess of Plaintiff's

Ability to Pay and Further Ordering that Defendant, Wife, Was Entitled to Half of the Plaintiff, Husband's[,] Retirement Plan Going Back to the Date of the First Marriage and Totally Ignoring the Previous Divorce thus Leaving Plaintiff [,] Husband[,] with Nothing to Support Himself. This Again Supports the Argument that the Trial Court Judge Had Read the Transcript of the Prior Hearing.

{¶ 79} Under this assignment of error, Larry contends that the trial court must have read the transcript of the prior hearing, because there was allegedly no testimony on spousal support during the final hearing. In making his arguments, Larry again cites testimony and exhibits from the contempt hearing, and also refers to matters that are not in the record. For example, Larry assumes that the overdraft charges in 2011 "must" have driven the bank's decision to repossess his farm equipment. However, there is nothing in the record to support this assumption.

{¶ 80} After hearing the testimony, the magistrate recommended that Larry pay Susan $1,000 per month in spousal support, with support terminating on Susan's death, remarriage, or cohabitation with an adult male in a marriage-like relationship. To support this award, the magistrate made findings on the pertinent factors in R.C. 3105.18(C)(1)(a)-(m). The trial court agreed with the magistrate and adopted his findings and recommendations on the spousal support issue. The trial court also added a provision for retention of jurisdiction, so that spousal support could be decreased or terminated due to a change in circumstances.

{¶ 81} "Trial courts have broad discretion regarding spousal support orders. Accordingly, an appellate court ordinarily will not disturb those orders absent an abuse of

discretion." (Citations omitted.) *Papp*, 2d Dist. Montgomery No. 25333, 2013-Ohio-506, at ¶ 15. "A trial court abuses its discretion when the court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140.

{¶ 82} According to the evidence presented at the final hearing, the parties' adjusted gross income for 2010 (the year preceding the divorce) was $102,318. Of that amount, the bulk of income came from Larry's job as a custodian ($40,959) and farm income ($46,531, without depreciation). Susan's income represented about $10,000 of the total income of the parties.

{¶ 83} Susan worked part-time for a dry cleaner, where she had worked since 1994. Larry had been employed at Miami East Local School District as a custodian for 27 years, but lost his job in December 2011, after the divorce was filed, due to his voluntary actions. Larry also decided, after the divorce, not to farm his mother's land as he had in the past for many years. The magistrate found that Larry was voluntarily unemployed, and the trial court agreed. Due to Larry's own actions, approximately $87,490 worth of income was no longer available.

{¶ 84} At the time of the divorce hearing, Susan was working 30 to 32 hours per week, at a pay rate of $8.40 per hour. Thus, Susan's maximum yearly income, without vacations, would be about $13,977. Susan was living with her daughter and was not able to afford her own home or to purchase an automobile. Susan testified that she had looked for full-time work, but was not successful, due to her age (55). In contrast, Larry was living in a home owned by his mother, where he did not have to pay rent and only paid utilities.

{¶ 85} Susan had graduated from high school and had some training in 1980 as a nurse's aid. However, she had only worked in that field for a short time. During their marriage, the parties made the decision that Susan would stay home and raise the children, who

were born in 1975 and in 1980.  During their marriage, Susan and Larry also had a comfortable lifestyle, owning nice cars and decent furniture.  Finally, Susan testified that she believed Larry would hide and destroy assets so that she could not have anything.  As noted, Larry had already attempted to conceal assets.

{¶ 86}　In view of the evidence submitted, the trial court did not abuse its discretion in awarding spousal support.  Based on Susan's age, lack of education, and job experience, it is unrealistic to think that she would be able to significantly better her job situation.  Her income, based on the amount of retirement money, spousal support, and earning ability, would still be modest, particularly in light of the fact that Susan's only asset, the 17-acre parcel of land, would likely be of little value after payment of outstanding obligations.  Larry's own lack of income has been caused by his voluntary actions, and is not a basis for refusing to award spousal support.

{¶ 87}　Furthermore, based on the above discussion, the award of spousal support was also not against the manifest weight of the evidence.  *Eastley,* 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, at ¶ 17.  The trial court did not clearly lose its way and create a manifest miscarriage of justice.  *Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, at ¶ 8.

## IX.　Did the Trial Court Err in its Allocation of Debt?

{¶ 88}　Larry's Eighth Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion and Against the Manifest Weight of the Evidence in that the Trial Court Failed to Allocate Any of the Outstanding Debts to the Defendant/Wife Yet

Awarded Her Substantially All of the Marital Assets with No Allocation of Debt.

{¶ 89}   Under this assignment of error, Larry contends that the trial court should have offset the student loan obligation against the other allocations of assets, and should not have assigned all the equity in any property to Susan.

{¶ 90}   As a preliminary matter, we note that most of the comments in Larry's brief about the student loan, such as the identity of the primary and secondary obligors, are not part of the record.   Larry did not even submit evidence at trial about the outstanding balance of the loan.   As we noted earlier, "[a] reviewing court cannot add matter to the record before it, which was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter."  *Ishmail,*   54 Ohio St.2d at 402, 377 N.E.2d 500, paragraph one of the syllabus.

{¶ 91}   We also previously addressed the assets and debts in our discussion of the Fifth Assignment of Error.   In light of that discussion, the trial court did not abuse its discretion regarding debt and asset allocation, and the judgment is also not against the manifest weight of the evidence.

{¶ 92}   Accordingly, the Eighth Assignment of Error is overruled.

X.   Did the Trial Court Abuse its Discretion Regarding the Retirement Plan?

{¶ 93}   Larry's Ninth Assignment of Error is as follows:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse

of Discretion and Against the Manifest Weight of the Evidence in that the Trial

Court Granted the Defendant/Wife Half of the Plaintiff/Husband's Retirement

Plan Going Back to the Date of the First Marriage and Totally Ignored the

Divorce and then Granted Spousal Support Equal to Plaintiff's Other Half Interest in the Retirement Plan, thereby Granting the Defendant/Wife His Entire Retirement Plan.

{¶ 94}    Under this assignment of error, Larry indicates that the duration of the marriage was discussed in his Third Assignment of Error.   We agree, and have already rejected Larry's position on that issue.   Larry additionally contends that the trial court should not have awarded Susan one-half of his retirement plan based on the duration of the marriage when the Social Security Administration would not recognize the parties as having a ten-year marriage.

{¶ 95}    In *Neville v. Neville*,  99 Ohio St.3d 275, 2003-Ohio-3624, 791 N.E.2d 434, the Supreme Court of Ohio noted that "[a]lthough a party's Social Security benefits cannot be divided as a marital asset, those benefits may be considered by the trial court under the catchall category as a relevant and equitable factor in making an equitable distribution.   Accordingly, * * * a trial court, in seeking to make an equitable distribution of marital property, may consider the parties' future Social Security benefits in relation to all marital assets."   *Id.* at ¶ 11.

{¶ 96}    The Supreme Court of Ohio did not say that Social Security benefits must be considered; it simply gave courts permission to consider the benefits.   In any event, Larry failed to present any evidence regarding Susan's prospective Social Security payments at such time as she will reach retirement age.   This issue, therefore, has been waived.   *See Schade v. Carnegie Body Co.,* 70 Ohio St.2d 207, 210, 436 N.E.2d 1001 (1982), which stresses "the fundamental rule * * * that an appellate court will not consider any error which could have been brought to the trial court's attention, and hence avoided or otherwise corrected."   (Citation omitted.)

{¶ 97}    Even if this matter were considered as plain error, the Supreme Court of Ohio

has stressed that "[i]n appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." (Citations omitted.) *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997), syllabus.

{¶ 98}    In the case before us, Larry not only failed to object, he also failed to submit any evidence on this matter in the trial court.   This is not a situation that challenges the legitimacy of the underlying judicial process.

{¶ 99}    Accordingly, the Ninth Assignment of Error is overruled.


XI.   Did the Trial Court Abuse its Discretion in Finding Financial Misconduct?

{¶ 100}         Larry's Tenth Assignment of Error states that:

The Decision of the Magistrate Upheld by the Trial Court Was an Abuse of Discretion [and] Against the Manifest Weight of the Evidence when the Trial Court Refused Testimony by the Plaintiff as to How He Used the Proceeds of the Sale of the Farm to Pay Off Marital Debt Including Debts of the Defendant/Wife. The Trial Court Then Accepted Unsupported Testimony of the Defendant/Wife as to Alleged Financial Misconduct of the Plaintiff in Regard to Gambling Debts. Defendant Indicated that She Had Evidence to Support the Same[;] However the Same Was Never Submitted in the Spousal Support Hearing and/or Final Hearing.

{¶ 101}         Under this assignment of error, Larry again challenges the trial court's

decision that he committed financial misconduct. According to Larry, there was no evidence of financial misconduct. Larry further contends that Susan's testimony about misconduct was unsupported by evidence that contradicted Larry's "very matter-of-fact" and "straightforward" testimony at the contempt hearing. Appellant's Brief, p. 18.

{¶ 102} We have previously rejected Larry's attempt to have the testimony from the contempt hearing considered. However, the decision issued by the magistrate after that hearing indicates that Larry was found in contempt of court in February 2012, based on his failure to provide a monthly accounting of crop proceeds as ordered. The magistrate noted that Larry had placed crop proceeds in the name of others and had deprived Susan of crop proceeds. In addition, the magistrate noted that Larry claimed not to be able to remember the name and address of an individual in whose name he had placed significant crop proceeds. February 2, 2012 Magistrate's Decision, Doc. #54, p. 2. This record suggests that Larry's testimony was not perceived as "straight-forward."

{¶ 103} We have previously discussed the issue of financial misconduct in our ruling on Larry's Fourth Assignment of Error. Based on that discussion, the Tenth Assignment of Error is without merit and is overruled.

XII. Conclusion

{¶ 104} All of Larry's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN and HALL, JJ., concur.

Copies mailed to:

Thomas J. Buecker
Frank J. Patrizio
Hon. Christopher Gee